**Milan FEHIR, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–2314.**

Supreme Court of Alaska.

May 20, 1988.

Russell W. Pritchett, Bellingham, Wash., for petitioner.

Lance B. Nelson, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Milan Fehir filed a petition for hearing before this court to review the court of appeals' decision denying him a hearing to seek remission of his forfeited security interest in the fishing vessel, *St. Roland.* See *Fehir v. State*, 739 P.2d 785 (Alaska App.1987). We reverse.[1]

1. Because this appeal presents questions of law, we review this case under the "substitution of judgment" standard. *Borkowski v. Snowden,*

In February 1985, Fehir loaned $45,000 to Ljudevit Blazevic to purchase the fishing vessel *St. Roland.* Blazevic pledged the *St. Roland* as security for the $45,000 loan. Fehir hired an attorney to draft a promissory note that documented the loan and the security agreement. Blazevic executed the note on February 27, 1985.[2] The security agreement was not perfected by recording it, as required by federal law, 46 U.S.C. App. § 921 (the Ship Mortgage Act)[3] or state law, AS 45.09.302.[4]

After he purchased the *St. Roland,* Blazevic fished in the Bristol Bay drift net fishery in 1985. On June 30, 1985, he was cited for commercially fishing in the Naknek district in closed waters, without a permit holder[5] on board, and without registering the *St. Roland.* He was subsequently found guilty of commercially fishing during a closed period in violation of 5 AAC 06.320(e), and of commercially fishing without a permit holder on board in violation of 5 AAC 39.107(d). The district court imposed penalties on each count of thirty days incarceration (suspended), $5,000 fine (suspended), and forfeiture to the state of the *St. Roland,* her equipment, and the value of the fish on board.

Blazevic appealed these penalties to the superior court. Fehir moved to intervene in the district court proceedings to seek remission of the forfeiture of the *St. Roland.* Fehir asserted that he was a secured party, and, at the time he obtained a security interest in the vessel, he was innocent and non-negligent, without reason to believe that the *St. Roland* would be used in illegal activity. He argued, therefore, that he was entitled to a remission of the forfeiture of the *St. Roland,* or alternatively, reimbursement for his security interest in the vessel.

Fehir's motion was considered by the district court.[6] The court ruled that the promissory note constituted a valid security interest. The court also noted that Fehir would be entitled to a remission hearing if his interest was of the type intended to be protected under *State v. Rice,* 626 P.2d 104 (Alaska 1981). The district court went on to conclude, however, that the constitutional protection required in *Rice* did not apply to parties, such as Fehir, who had failed to record their security interests.

Fehir appealed to the court of appeals. The court of appeals affirmed the district court's judgment. *Fehir v. State,* 739 P.2d 785 (Alaska App.1987). The court of appeals held that Fehir had no right to a remission hearing under federal law or under Alaskan law as articulated in *Rice* because by not perfecting his security interest, Fehir had "not done all that he could reasonably be expected to do to avoid illegal activity." *Id.* at 787. Fehir then petitioned for a hearing before this court.

665 P.2d 22 (Alaska 1983); *Guin v. Ha,* 591 P.2d 1281 (Alaska 1979).

2. Under the terms of the promissory note, $45,000, plus 10 percent interest, was to be repaid to Fehir on or before December 1, 1985. The document specified that the "loan is secured by a lien against the fishing vessel, *St. Roland....*" It further provided that "[s]hould default be made in the payment of principal and interest, when sum is due, the undersigned does hereby stipulate that he will execute a document signing over the fishing vessel to the creditor."

3. Section 921 of 46 U.S.C.App. requires that a "sale, conveyance, or mortgage" of "a vessel of the United States" be recorded in order to be valid against third parties. "Vessel of the United States" is defined in 46 U.S.C.App. § 911(4) as "any vessel documented under the laws of the United States." The *St. Roland's* United States Coast Guard number indicates that she is so documented.

4. Alaska Statute 45.09.302 specifies the requirements for perfecting a security interest under Alaska's version of the Uniform Commercial Code.

5. Alaska Statutes 16.43.140–.180 establish an "entry permit system" for commercial fishing in the state. Alaska Statute 16.43.140(a) provides: "After January 1, 1974, a person may not operate gear in the commercial taking of fishery resources without a valid entry permit or a valid interim-use permit issued by the [Alaska Commercial Fisheries Entry] commission."

6. The court's decision was erroneously captioned and signed as before the superior court. However, Judge Buckalew clearly considered Fehir's motion in his capacity as a district court judge sitting *pro tem.*

■ Both the district court and the court of appeals concluded that the federal Ship Mortgage Act, 46 U.S.C.App. §§ 911–984, was inapplicable to this case. We agree. The Ship Mortgage Act was designed to encourage private investment in the shipping industry, *see, e.g., United States v. Oil Screws Ken, Jr., Linda Sue, etc.,* 275 F.Supp. 792, 796 (D.La.1967); *Chemical Bank New York Trust Co. v. S.S. Westhampton,* 358 F.2d 574, 580 (4th Cir.1965), *cert. denied,* 385 U.S. 921, 87 S.Ct. 228, 17 L.Ed.2d 145 (1966). It was not intended to apply to the circumstances of the instant case, where there has been a governmental taking of an individual's interest in property without due process or just compensation.[7]

■ In *State v. Rice,* 626 P.2d 104 (Alaska 1981), we held that although the federal constitution did not require that the innocent, non-negligent owner or security holder of a vessel forfeited to the government be granted a hearing, *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Alaska constitution required a hearing. 626 P.2d at 113. Relying on *Rice,* the district court found that, "if [Fehir's] 'interest' in the F/V ST. ROLAND is of the kind the *Rice* decision sought to protect" Fehir would be entitled to a remission hearing.

In *Rice* we described the requirements to be met by a person seeking a remission hearing:

We think that limits must be recognized as to the care a creditor can be required to take to safeguard a security interest. We think that if a party can show "the manner in which the property came into

possession of such person" and that "prior to parting with the property *he did not know, nor have reasonable cause to believe, [either] that the property would be used to violate [the law, or]* ... *that the violator had a criminal record or a reputation for commercial crime,"* substantive due process under the Alaska Constitution requires that a procedure be available for remission of the forfeited item.

626 P.2d at 114. (Footnote omitted; emphasis supplied.)

We did not articulate a requirement in *Rice* that the security interest be perfected before the security holder would be entitled to a hearing. The district court, however, held that because Fehir did not perfect his otherwise valid security interest and "put the whole world on notice" of his interest in the *St. Roland,* he was not entitled to a hearing.

The court of appeals agreed with the district court, citing as reasons for its affirmance (1) Fehir's failure to do all he could to avoid illegal activity by recording his security interest,[8] and (2) "concern[] that a failure to perfect a security interest ... may invite ... fraud...." 739 P.2d at 787.

We acknowledge the legitimacy of the court of appeals' concern that the absence of a recorded security interest could lead to fraudulent claims of interest in forfeited property. We do not, however, believe this concern requires the hearing mandated by *Rice* be denied to the holder of an unrecorded security interest.

■ Because the federal Ship Mortgage Act does not preempt state law in this

---

7. Even in the case of a properly recorded mortgage, the Ship Mortgage Act provides that forfeiture of the vessel shall not terminate the rights of an innocent mortgagee. 46 U.S.C.App. § 961(b) provides:

The interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by the forfeiture of the vessel for a violation of any law of the United States, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation.

8. The court of appeals stated that "as a matter of public policy, we conclude that a party who has not utilized available state and federal opportunities to perfect his security interest has not done all that he could reasonably be expected to do to avoid illegal activity." 739 P.2d at 787. We think this reasoning is somewhat illogical. The purpose of the statute requiring that security interests in vessels be recorded in order to be valid against third parties is not to prevent violation of fishing regulations; it is to provide notice to persons who subsequently purchase or otherwise acquire a vessel that liens exist on the vessel.

case,[9] the Alaska Uniform Commercial Code determines the effect of Fehir's unperfected security interest in the *St. Roland*. Alaska Statute 45.09.301 provides that an unperfected security interest is valid, but subordinate to other interests.[10] Because such interests are unrecorded, the holder of an allegedly unperfected security interest must prove to the court that he or she has such an interest.[11] Once a sufficient showing is made, the security holder should be entitled to a hearing under *Rice*. Placing the burden on the party asserting the interest to demonstrate the existence of a security interest will reduce the possibility of fraud.[12]

At the remission hearing, the holder of the unperfected security interest will have to prove, under state law, that his or her interest is superior to those asserted by others. *See* AS 45.09.301.[13] In this case Fehir would have to demonstrate that his interest entitled him to compensation from the state from the forfeiture of the *St. Roland*.

**9.** By its terms, the federal act was not intended to govern the determination of rights in a forfeiture action, *see* 46 U.S.C.App. § 961, *supra* n. 6. Congress did not, therefore, demonstrate a clear and manifest purpose to occupy the entire field of determining the rights of security holders in forfeited vessels. *State v. F/V Baranof*, 677 P.2d 1245, 1249 (Alaska 1984).

Additionally, there is no actual conflict between state and federal law on this issue, the second ground for federal preemption articulated in *Baranof*. Although the state argued that AS 45.09.104 "precludes application of the [state] U.C.C. to the facts of this case," its argument ignores 46 U.S.C.App. § 961(b), which expressly disavows application to forfeiture actions. In relevant part, AS 45.09.104 provides:

This chapter does not apply (1) to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that the statute governs the rights of parties to and third parties affected by transactions in particular types of property....

Since § 961(b) precludes the federal act from terminating or determining the rights of a mortgagee in a forfeiture action, the Alaska U.C.C. governs.

**10.** Alaska Statute 45.09.301 provides:

*Persons who take priority over unperfected security interests; "lien creditor."* (a) Except as otherwise provided in (b) of this section, an unperfected security interest is subordinate to the rights of

(1) persons entitled to priority under AS 45.09.312;

(2) a person who becomes a lien creditor before it is perfected;

(3) in case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business or is a buyer of farm products in ordinary course of business to the extent that the person gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;

(4) in the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that the person gives value without knowledge of the security interest and before it is perfected.

(b) If the secured party files with respect to a purchase money security interest before or within 10 days after the debtor receives possession of the collateral, secured party takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing.

(c) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

(d) A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made before the person becomes a lien creditor or within 45 days thereafter or made without knowledge of the lien or under a commitment entered into without knowledge of the lien.

**11.** Fehir made such a showing.

**12.** *See State v. Fouse*, 120 Wis.2d 471, 355 N.W.2d 366, 370 (App.1984) in which the court rejected the reasoning adopted by the court of appeals. "To say that trial courts are going to *ipso facto* believe every such [fraudulent] claim [to an unperfected security interest] insults the integrity of the judicial process."

**13.** An unperfected security interest in a forfeited vessel might be found to be subordinate, for example, to the interest of a lien creditor under AS 45.09.301(a)(2). In such a case, the holder of the unperfected security interest, although entitled to a remission hearing, and to remission, might not be able to realize the full value of the interest held. For example, if in the instant case the *St. Roland* were sold for $60,000, and the holder of an interest superior to Fehir's interest had a $40,000 lien against the vessel, Fehir would only be able to recover $20,000 of his $45,000 interest.

Fehir is an innocent non-negligent holder of a security interest in the forfeited vessel *St. Roland*. Because his interest is unrecorded, he must prove to the court that it is valid. Since Fehir made such a showing, we hold that under our decision in *State v. Rice* he is entitled to a remission hearing. The decision of the court of appeals is therefore REVERSED and REMANDED to the district court for a remission hearing.[14]

14. We reject as unmeritorious the state's argument that it is a lien creditor within the meaning of AS 45.09.301(a)(2), (c) and is therefore entitled to superiority over Fehir's interest. *See State v. Moriarity*, 268 F.Supp. 546, 562–63 (D.N. J.1967).