John WAISTE and George
Ryan, Appellants,

v.

STATE of Alaska and Donald W.
Bunselmeier, individually and in
his official capacity, Appellees.

No. S–8068.

Supreme Court of Alaska.

Oct. 13, 2000.

Andrew M. Hemenway and Wm. Grant Callow, Anchorage, for Appellants.

Raymond M. Funk, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, and BRYNER, Justices.

*OPINION*

COMPTON, Justice.

## I. INTRODUCTION

John Waiste and George Ryan (collectively, Waiste) appeal a summary judgment that the State of Alaska does not owe them compensation for its *ex parte* seizure and retention of their fishing boat during a criminal prosecution and civil *in rem* forfeiture action based on a violation of fishing regulations. This appeal presents three principal issues. First, does due process require that the State, in every case in which it shows probable cause that a boat has been used in a fishing violation, either afford a hearing or show that exigent circumstances justify *ex parte* seizure? Second, do the forfeiture statutes permit the State, if it seizes a boat in connection with a criminal prosecution, to retain the boat after that prosecution ends in order to seek a civil forfeiture? And third, does the State's retention of a fishing boat between the end of the criminal prosecution and the dismissal of the civil forfeiture action constitute a compensable taking? We answer the first and third questions in the negative and the second in the affirmative; accordingly, the superior court's decision is affirmed.

## II. FACTS AND PROCEEDINGS

On July 8, 1992, while Waiste was skippering the F/V CHRISTINA ROSE, several people saw him fish for salmon in closed waters at the mouth of Big Creek, in the Egegik district. An Alaska Department of Fish and Game investigation ensued. Assistant Attorney General (AAG) Lance Nelson, after consulting with officers of the Department of Public Safety's Division of Wildlife Protection, decided to have the boat seized. He acted in part on a mistaken belief that Big Creek was a salmon-spawning stream and that Waiste had thus committed the serious offense of "creek robbing." In an *ex parte* hearing on July 11, the State showed probable cause that the CHRISTINA ROSE had been used in illegal fishing and obtained a seizure warrant from the Naknek District Court. The State seized the boat that day, which was soon after the peak of the Egegik salmon run, and issued Ryan and Waiste misdemeanor citations.

Waiste moved at once for the boat's release on bond. On July 13 the superior court held a hearing in Anchorage; Waiste's counsel participated by phone. AAG Nelson opposed release on bond "because of the extremely egregious nature of the [creek-robbing] violation." The hearing was limited to the bond issue. On July 14 the court held a second hearing. Before that hearing, Nelson informed the court that he had erred in accusing Waiste of creek-robbing. Waiste claims that "the State continued to insist ... that the vessel should not be released on bond." Log notes for the second hearing, however, show that Nelson said that the State was willing to stipulate to a release on bond for fair market value. Waiste's counsel deemed this "extortion."

At the end of the second hearing, the court set bond at the boat's fair market value, $90,000. A seafood company held a preferred ship mortgage on the CHRISTINA ROSE of more than $90,000. Waiste affied that he could not post the bond, so he rented a substitute boat for the rest of the 1992 season; he further affied that he lost substantial profits.

Waiste did not challenge the basis for the seizure in the hearings. The court had opined in the first hearing that, because it was a bond hearing, it would "not necessarily cover [the] same thing[s]" as a Criminal Rule 37(c) hearing, in which a property owner can contest the basis for a seizure.[1] The court may have limited the hearings' scope because it was sitting in Anchorage and, at least in the first hearing, lacked access to both witnesses and a copy of the warrant. Waiste's counsel had also stressed the need for a quick ruling.

The State arraigned Waiste on July 15. It filed a civil *in rem* forfeiture complaint against the CHRISTINA ROSE on July 31. It agreed to delay Waiste's criminal trial until after the 1992 fishing season, and to hold the civil forfeiture action in abeyance until after the criminal trial. In September 1992 a jury acquitted Waiste of criminally negligent violation of fishing laws, but found him guilty of a strict-liability (quasi-criminal) violation.[2]

 A 1992 set of forfeiture guidelines drafted by Nelson says that "[i]t has been the policy of the Attorney General's office" not to seek an *in rem* forfeiture if it seeks but fails to obtain an *in personam* forfeiture as part of a criminal sentence. In this case, the State could not obtain an *in personam* forfeiture as part of Waiste's sentence, for *in personam* forfeiture of a boat is not an authorized sanction for the strict-liability violation of which Waiste was convicted.[3] Despite Nelson's guidelines, however, the State did not dismiss its *in rem* forfeiture action against the CHRISTINA ROSE.

Waiste answered the *in rem* forfeiture complaint on the CHRISTINA ROSE's behalf in February 1993. In April the

CHRISTINA ROSE moved to lower her bond to $10,000; the State opposed. Sometime in May, AAG Nelson offered to stipulate to a dismissal and return of the boat, with each side to bear its own costs and fees. Waiste did not accept. On May 17 the court heard argument and lowered the bond to $80,000. On May 27 Waiste moved for summary judgment in the *in rem* action on double jeopardy grounds. On June 10 the State moved to dismiss its *in rem* claim with prejudice. Waiste did not oppose, but sought to preserve his rights to seek attorney's fees—which he was eventually awarded—and to make *in personam* claims against the State. The court dismissed the forfeiture claim with prejudice.

In July 1994 Waiste filed a complaint alleging, after amendment, federal and state constitutional violations and a common-law conversion claim. Defendants successfully moved for summary judgment. Waiste appeals.

## III. DISCUSSION

### A. Standards of Review and Summary of Issues

 We decide *de novo* how to construe the Alaska and federal Constitutions, and Alaska statutes, adopting rules of law that best reflect precedent, reason, and policy.[4] We review summary judgments *de novo*. If there is no genuine dispute of material fact, we will affirm if the undisputed facts entitle the movant to judgment as a matter of law.[5] Waiste does not claim a dispute of material fact, only that the State is not entitled to judgment as a matter of law. We view the facts in the best light for the nonmovant—

---

1. See Alaska R.Crim.P. 37(c) ("A person aggrieved by an unlawful search and seizure may move the court ... for the return of the property and to suppress for use as evidence anything so obtained on the ground that the property was illegally seized.").

2. The State had dismissed the charge against Ryan. However, because he is co-owner of the CHRISTINA ROSE, he continues to seek damages alongside Waiste and remains a party to this appeal.

3. *Compare* AS 16.05.722 (providing penalties, not including boat or gear forfeitures, for strict-liability fishing violations) *with* AS 16.05.723 (providing penalties, including boat or gear forfeitures, for criminally negligent violations).

4. *See, e.g., Todd v. State,* 917 P.2d 674, 677 (Alaska 1996).

5. *See, e.g., Metcalfe Invs., Inc. v. Garrison,* 919 P.2d 1356, 1360 (Alaska 1996).

here, Waiste—and draw all reasonable inferences in Waiste's favor.[6]

There are two periods in which the State may have violated Waiste's rights or taken his property without compensation. The first period is between the July 11, 1992, seizure and the July 14 postseizure hearing. Waiste argues that the *ex parte* seizure violated due process and is compensable as a taking, or subject to damages in a *Bivens*[7]-type claim, under the Alaska Constitution. The second period is between Waiste's September 1992 acquittal on the criminal charge and the State's June 1993 abandonment of its civil forfeiture action. Waiste advances three theories supporting his right to recover compensation or damages for that period: (1) the statute governing seizure of fishing gear required the State to return his boat at the end of the criminal case, making its retention thereof a conversion; (2) the State's pursuit of a forfeiture claim violated the Alaska Constitution's Double Jeopardy Clause; and alternatively, (3) even if the State did not violate Waiste's rights, it took his property by retaining his boat and owes him compensation therefor.

**B. *Waiste's Allegations of the State's Violations of His Rights***

1. *The Alaska Constitution's Due Process Clause allows the State, when it has probable cause to think that a boat has been used in a fishing violation, to seize the boat without prior notice or an adversarial hearing.*

■ Waiste and the State agree that the Due Process Clause of the Alaska Constitution requires a prompt *postseizure* hearing

upon the seizure of a fishing boat potentially subject to forfeiture. The question is thus narrowed to whether a *preseizure* hearing is due.[8]

Waiste argues that (1) federal precedent leaves unclear whether the federal Due Process Clause allows a government in all cases to seize a fishing boat without prior notice or hearing; (2) suggestions in this court's precedent that the State may do so were *dicta;* (3) we interpret Alaska's Due Process Clause more broadly than its federal counterpart; (4) therefore, the *ex parte* seizure in this case violated Alaska's Due Process Clause. The State argues that a prompt postseizure hearing is the only process due, both under general constitutional principles and under this court's precedents on fishing-boat seizures, whose comments were not *dicta.*[9]

■ The baseline for our inquiry is simple: "We have consistently held that, except in emergencies, due process requires the State to afford a person an opportunity for a hearing *before* the State deprives that person of a protected property interest."[10] Waiste claims that due process requires the State to show an emergency in each individual case before it makes an *ex parte* seizure; any "categorical approach" would violate due process. This cannot be true. There are categories of cases in which seizures without prior notice or an adversarial hearing—i.e., seizures after an *ex parte* warrant hearing—are always permissible. An obvious example is the seizure of evidence in criminal investigations.[11] But Waiste's claim is helpful if read thus: even if the public interest in a class of cases will justify *ex parte* seizure in some of those cases, due process still re-

6. *See id.*

7. *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that claim, analogous to 42 U.S.C. § 1983 action, could lie against federal agents for violations of constitutional rights).

8. Waiste argues in his opening brief that the forfeiture statute is facially unconstitutional because it lacks standards for forfeiture actions, but—as the State noted in its brief, and Waiste did not contest in his reply—he waived this claim by failing to raise it below.

9. The State also argues that waiver, *res judicata,* and public policy bar Waiste's claim; because we conclude that the State is essentially correct on the merits, we need not address these arguments.

10. *Hoffman v. State, Dep't of Commerce & Econ. Dev.,* 834 P.2d 1218, 1219 (Alaska 1992) (citing *Graham v. State,* 633 P.2d 211, 216 (Alaska 1981)).

11. *See, e.g., Morris v. State,* 473 P.2d 603 (Alaska 1970).

quires that the State make a particularized showing, in each such case, that exigent circumstances warrant *ex parte* seizure in that case. Only if all or most cases in a class involve such exigency may the State always proceed *ex parte*.

We must decide whether the interests in *this* sort of case—fishing-boat seizures—justify a blanket exception to the requirement of preseizure hearings. To do so, we must apply the due-process balancing test that we have adopted from the United States Supreme Court's opinion in *Mathews v. Eldridge*.[12] Before applying that general test, however, we review what that Court and we have previously said on the issue of preseizure hearings in forfeiture cases.

In *Calero–Toledo*, the Supreme Court approved Puerto Rico's *ex parte* seizure of a yacht on which authorities had found drugs.[13] The Court's opinion as a whole shows not just that the facts of that case justified an *ex parte* seizure, but that a *class* of cases—*i.e.*, statutory seizures of boats carrying contraband—warranted a blanket rule allowing *ex parte* seizure in all such cases.[14] One can, however, debate how broad that class of cases is; the Court did not define it.

Two decades later, in *United States v. James Daniel Good Real Property*, the Court made clear that the class of cases covered by *Calero–Toledo* does *not* include seizures of real property.[15] The Court held

that due process "requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture."[16] It did allow the government to show that exigent circumstances mandate *ex parte* seizure in a given case, if "less restrictive measures—*i.e.*, a *lis pendens*,[17] restraining order, or bond—would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property."[18]

The *Good* Court distinguished *Calero–Toledo* by contrasting the ease of moving, hiding, or destroying a boat with the difficulty of so handling real property.[19] It did not define a class of cases in which governments may always make *ex parte* seizures. But the Court's focus on the uniqueness of real property suggests that *Good* did not narrow *Calero–Toledo* much; after *Good*, it is likely that *ex parte* seizure of real property is the only type of seizure that is barred.[20] Federal law, then, permits *ex parte* seizure in a class of cases at least as broad as "oceangoing boats used to transport illicit drugs." It bars *ex parte* seizures in a class of cases that is probably no broader than "real property."

▆ The seizure here falls between those two classes, though obviously much closer to that in *Calero–Toledo*. Post-*Good* circuit court opinions suggest that *Good* is limited to real property.[21] Of course, the federal

---

**12.** 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (adopted as standard for due process under Alaska Constitution in *Homer v. State, Department of Natural Resources*, 566 P.2d 1314, 1319 (Alaska 1977)).

**13.** *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 665–67, 678–80, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**14.** *See id.* at 676–80, 94 S.Ct. 2080.

**15.** 510 U.S. 43, 57–58, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

**16.** *Id.* at 62, 114 S.Ct. 492.

**17.** *See Black's Law Dictionary* 1081 (Rev. 4th ed.1968) (defining "notice of *lis pendens*" as "notice filed for the purpose of warning all persons that the title to certain property is in litigation, and that, if they purchase the defendant's

claim to the same, they are in danger of being bound by an adverse judgment"). Such a device would, of course, be of no avail in the instant case; a notice of *lis pendens* may be filed only as to real, not personal, property. *See* AS 09.45.940.

**18.** *Good*, 510 U.S. at 62, 114 S.Ct. 492.

**19.** *See id.* at 57–58, 114 S.Ct. 492.

**20.** *See also id.* at 74–76, 114 S.Ct. 492 (O'Connor, J., concurring and dissenting in part) (arguing that *all ex parte* pre-forfeiture seizures should be constitutional under *Calero–Toledo* ).

**21.** *See United States v. $129,727.00 in U.S. Currency*, 129 F.3d 486, 493 (9th Cir.1997); *United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1392 (10th Cir.1997); *Madewell v. Downs*, 68 F.3d 1030, 1038–39 (8th Cir.1995). Two courts of

courts' interpretation of the federal Due Process Clause is only persuasive, not binding, authority when we interpret the Due Process Clause of the Alaska Constitution.

As for Alaska law, the State relies on two opinions involving fishing-boat seizures: *F/V American Eagle v. State*[22] and *State v. F/V Baranof*.[23] In *American Eagle*, we heard a due process claim about the *ex parte* seizure of a fishing vessel under AS 16.05.190–.195, the statutes at issue here.[24] As the State stresses, we cited *Calero–Toledo* and said that, "[w]here property allegedly used in an illicit act is confiscated ... pending a forfeiture action, no notice or hearing is necessary prior to the seizure."[25] Waiste argues that this was *dictum;* the State deems it an integral part of the holding.

Technically, Waiste is right. The AMERICAN EAGLE's owners only "complain[ed that] they were denied due process in that the [statutes] provide for no ... prompt *postseizure* notice and hearing."[26] They implicitly conceded that no *preseizure* process was due, and we expressly limited our decision to whether the statute was constitutional as applied, not on its face. Our opinion, read as a whole, makes clear that we did not address whether due process required a preseizure hearing.[27] We simply held that, while the owners claimed that due process

required that *the statute* provide a prompt postseizure hearing, their claim failed because such a hearing had in fact been available under Criminal Rule 37(c).[28] And as we explain in the margin, our opinion in *Baranof* also provides only *dicta* supporting the State's position.[29]

The *dicta* in *American Eagle* and *Baranof* strongly suggest that the State need only provide a prompt postseizure hearing. But had the owners in *American Eagle* and *Baranof* insisted that a preseizure hearing was due, we might not have so readily presumed that a broad reading of *Calero–Toledo* applied. Moreover, it is in the sixteen years since *Baranof*—our last review of *ex parte* seizures of potentially forfeitable property—that the constitutionality of many long-accepted aspects of *in rem* forfeiture has become a hotly-contested, evolving area of law.[30]

Precedent does not foreclose Waiste's claim. This court's *dicta*, however, and the persuasive weight of federal law, both suggest that the Due Process Clause of the Alaska Constitution should require no more than a prompt postseizure hearing. With that in mind, we turn to general due process analysis.

a. *Application of the Mathews test to fishing vessel seizures*

appeals have suggested that *Good* could extend to personal property, but have not so extended it. *See United States v. All Assets and Equip. of W. Side Bldg. Corp.,* 58 F.3d 1181, 1192–93 (7th Cir.1995); *Organizacion JD Ltda. v. United States Dep't of Justice,* 18 F.3d 91, 94 (2d Cir.1994).

22. 620 P.2d 657 (Alaska 1980).

23. 677 P.2d 1245 (Alaska 1984).

24. *See American Eagle,* 620 P.2d at 662.

25. *Id.* at 666 (citing *Calero–Toledo* ).

26. *Id.* (emphasis added).

27. The opinion makes clear that the vessel's owners did not dispute that a prompt *postseizure* hearing was the only process due: "The owners ... also complain [that] they were denied due process of law in that the forfeiture statutes under which the vessel ... [was] seized provide for no *in rem* procedure or prompt *post[ ]seizure* notice and hearing." *Id.* (emphasis added).

28. *See id.* at 667, 94 S.Ct. 2080 (noting that the State had promptly notified owners of seizure and that they had an "immediate and unqualified right to contest the state's justification for the seizure before a judge under Criminal Rule 37(c)").

29. The BARANOF also argued, as we read its brief, that AS 16.05.195 "is constitutionally defective in that it does not provide a hearing either prior to or immediately after the seizure of property." *Baranof,* 677 P.2d at 1255. This no more squarely presents the question that Waiste raises than did *American Eagle,* for the BARANOF's argument implicitly concedes that a hearing "immediately after the seizure" would satisfy due process. As in *American Eagle,* we noted that, while the forfeiture statute did not expressly provide for a prompt postseizure hearing, Criminal Rule 37(c) had in fact made such a hearing available. *See id.* at 1255–56 (citing *American Eagle,* 620 P.2d at 667).

30. *See, e.g.,* Susan R. Klein, *Civil In Rem Forfeiture and Double Jeopardy,* 82 Iowa L.Rev. 183, 185–86 (1996).

 The *Mathews v. Eldridge*[31] test for whether a preseizure hearing is due requires a court to balance three things: (1) the private interest at risk; (2) the degree to which an adversarial hearing, as opposed to an *ex parte* hearing, will reduce the risk of erroneous deprivation; and (3) the State's interest, including that in avoiding any additional burden imposed by a preseizure hearing.[32]

While the parties discuss the *Mathews* factors, they mainly focus on three concerns that the *Calero–Toledo* Court noted in finding that seizure of a yacht used to run drugs was one of the " 'extraordinary situations that justify postponing notice and opportunity for a hearing.' "[33] (The Court did not apply the *Mathews* test in *Calero–Toledo* because that opinion preceded *Mathews.*) Those concerns are the need to seize the boat in order to (1) obtain *in rem* jurisdiction over the boat; (2) prevent removal, concealment, or destruction of the boat; and (3) prevent further illegal use of the boat.[34] In terms of *Mathews*, all of those factors constitute "government interests" in making seizures *ex parte.*[35] *Mathews* makes clear that we cannot review those interests in a vacuum, but must weigh them against the private interests at stake, in light of the risk of error in an *ex parte* preseizure hearing.[36]

#### i. *The governmental interests*

(1) *Jurisdiction.* The first governmental interest in *Calero–Toledo*—the need to seize ships in order to acquire jurisdiction to forfeit them—is absent here. Waiste argues at length that Alaska law does not require physical seizure of a fishing boat to give a court jurisdiction to forfeit it. The State, moreover, has implicitly conceded the issue; its brief says nothing about *in rem* jurisdiction.

The State notes instead that, when it seized the boat, it charged Waiste with a crime, and that, had he been convicted, the court could have ordered an *in personam* forfeiture of the boat as part of his sentence. *In personam* forfeiture, the State argues, citing our opinion in *Rubino v. State,*[37] requires "prior seizure of the items." That is incorrect. In *Rubino*, the State did not contest Rubino's claim that the *in personam* forfeiture of his drift-net was invalid because the State had never seized the net.[38] *Rubino* thus establishes no rule of law on the point. The State cites, and our research reveals, no authority for the rule that it asserts, namely that seizure of items is required for *in personam* forfeitures.

A post-*Rubino* statute, moreover, vitiates the State's argument. *Rubino's* criminal forfeiture was under AS 16.05.190; the legislature did not enact AS 16.05.195 until 1974.[39] Subsection (a) of AS 16.05.195 says that equipment used in fishing violations may be forfeited either "(1) upon conviction of the offender in a criminal proceeding . . . or (2) upon judgment . . . in a proceeding *in rem* [.]" Subsection (b) says, without distinguishing *in personam* and *in rem* forfeiture, that items "may be forfeited . . . regardless of whether they were seized before instituting

---

**31.** *See Homer v. State, Dep't of Natural Resources*, 566 P.2d 1314, 1319 (Alaska 1977) (adopting test of *Mathews*, 424 U.S. at 335, 96 S.Ct. 893).

**32.** *See, e.g., A. Fred Miller, Attys. at Law, P.C. v. Purvis*, 921 P.2d 610, 618 (Alaska 1996) (applying *Mathews* ); *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988) (same); *Hilbers v. Anchorage*, 611 P.2d 31, 36 (Alaska 1980) (same); *see also United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (applying *Mathews* to decide whether due process required preseizure hearing about forfeitable real property); *id.* at 77, 114 S.Ct. 492 (O'Connor, J., concurring in part) (agreeing that *Mathews* applies).

**33.** *Calero–Toledo*, 416 U.S. at 677, 94 S.Ct. 2080 (quoting the pre-*Mathews* standard of *Fuentes v.*

*Shevin*, 407 U.S. 67, 90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

**34.** *See id.* at 679, 94 S.Ct. 2080.

**35.** *See Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

**36.** *See, e.g., Good*, 510 U.S. at 53–59, 114 S.Ct. 492 (applying *Mathews* to *ex parte* seizure of forfeitable real property).

**37.** 391 P.2d 946, 948 (Alaska 1964).

**38.** *See id.* at 947–48.

**39.** *See* ch. 124, § 3, SLA 1974.

the forfeiture action."[40] Thus, we conclude that there is no jurisdictional need to seize fishing boats *ex parte.*

(2) *Preventing flight or destruction.* The State next argues that it must seize fishing boats without prior notice. It argues that it must do so to prevent fishing violators from, *inter alia,* fleeing with their boats, hiding them, or selling them to *bona fide* purchasers, who would be immune from forfeiture.[41] Waiste responds that he, unlike a drug dealer with an oceangoing yacht in Puerto Rico, was very unlikely to flee Alaska—where he has lived and fished for many years and where his family depends solely on his fishing income—in a thirty-two-foot boat. The State contends that many of the facts supporting his argument were not properly in the record on summary judgment. The State is correct about some of the facts Waiste alleges—*e.g.,* the CHRISTINA ROSE's non-oceangoing range. But Waiste did establish that he is a long-time Alaskan commercial fisher, and it may well be within the scope of reasonable inferences in his favor, on summary judgment, to conclude that he was unlikely to flee the jurisdiction in his boat.

We need not decide, however, whether that inference about Waiste is in fact reasonable, for the details of his personal situation are not dispositive. The relevant inquiry under *Mathews* is not into Waiste's individual circumstances, but into whether alleged commercial fishing violators *in general,* upon receiving preseizure notice of pending forfeiture proceedings, are likely to remove, conceal, or sell their boats. If most commercial fishing violators pose a risk of doing so, then due process should permit the State to seize boats *ex parte.* To do so, moreover, would not violate Waiste's rights, even if he, as an individual, happens to be among the fishers least likely to take such steps.

The *Calero–Toledo* Court, in discussing this issue, merely noted that "preseizure no-

tice and hearing might frustrate the interests served by the [drug] statutes, since the property seized—as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given."[42] A court could distinguish that broad comment by delineating a subclass of movable property—*e.g.,* non-oceangoing fishing boats—that are not likely to be "removed to another jurisdiction, destroyed, or concealed." To our knowledge, though, no court has yet done so.

In this case, we are not persuaded that the class of movable property at issue—fishing boats that the State has probable cause to believe were used in commercial fishing violations, and thus subject to forfeiture—presents a negligible risk of removal or concealment. As the State points out, in the typical case, owners could readily seek to evade forfeiture upon receiving notice of an impending preseizure hearing. Such owners could sail their vessels out of Alaskan waters, hide them, paint over their identifying numbers, or sell them to innocent purchasers. Preventing such removal or concealment constitutes, in the class of cases at issue, a significant government interest supporting a blanket rule allowing *ex parte* seizure.

(3) *Preventing continued illegal use.* Waiste focuses on this concern, but it was not a major factor in allowing *immediate* seizure in *Calero–Toledo.* The Court said that "[s]eizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property...."[43] It was the ultimate forfeiture that would "prevent[ ] continued illicit use of the property," not the marginal additional period the State would retain the property if a court granted a seizure following an *ex parte* hearing, rather than requiring notice and an adversarial hearing before granting it. *Immediate* sei-

---

**40.** *See also* AS 16.05.723 (authorizing *in personam* forfeiture of fishing boats upon conviction for criminal fishing violation and not saying whether items can be forfeited without prior seizure).

**41.** *See* AS 16.05.195(e).

**42.** 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**43.** 416 U.S. at 679, 94 S.Ct. 2080 (footnote omitted).

zure only served the interests in gaining jurisdiction and preventing flight.

*Good* focused on "[t]wo essential considerations" in *Calero–Toledo:* jurisdiction and flight.[44] The State correctly notes that *Good* "did not hold that government needs to make ... a showing [that further illegal activities are likely] prior to issuance of [a] search warrant for a prior criminal act," but the point has little force. As Waiste notes, the State's own policy in commercial fishing seizures of negotiating the release of vessels and allowing the owners to resume fishing—and its willingness in this case to delay Waiste's trial until after the fishing season—make quite implausible any suggestion that preventing continued violations is its immediate aim in seizing fishing boats *before* any hearing.[45]

Even if *ex parte* seizures might serve an interest in preventing continued illegal fishing, they do so but slightly: proceeding *ex parte* only prevents continued illegal use for the brief time between when the State seizes a boat *ex parte* and when it could do so after a hearing. It thus seems unlikely, and the State has certainly not shown, that *ex parte* seizures contribute meaningfully to preventing continued illegal use of fishing boats.

(4) *Avoiding the burden of a hearing.* The State alludes to the "extensive preseizure inquiry" that Waiste's proposed rule would require. But given the conceded requirement of a prompt postseizure hearing on the same issues, in the same forum, "within days, if not hours," [46] the only burden that the State avoids by proceeding *ex parte* is

the burden of having to show its justification for a seizure a few days or hours earlier. The interest in avoiding that slight burden is not significant.[47]

(5) *Other interests.* The State notes that the warrant under which it seized the boat also authorized it to seize evidence of crime, and that fishing violators could, if they received notice before the State seized their boats, hide or destroy such evidence. But as Waiste cogently notes, this argument is plainly fallacious; nothing bars the State from simultaneously executing a warrant to search for evidence and fruits of a fishing violation, seizing and safeguarding any such evidence, and notifying the boat's possessors that it has filed a forfeiture action and that the court will be holding a hearing on the State's request to seize the boat before the forfeiture.

▆▆ Finally, the State argues that a *lis pendens* would not protect its financial interest in a forfeitable vessel, because the rules of maritime lien prioritization "would allow liens for wages or maintenance and cure to continue to accrue and defeat or reduce any state forfeiture interest" in the vessel. It is true that *lis pendens* is of no help to the State, but for a more basic reason. As noted above, AS 09.45.940, the *lis pendens* statute, applies by its terms only to real property,[48] and we have never extended the availability of *lis pendens* to personalty. In any event, it seems a minor concern, unlikely to arise often. The State's forfeiture interest already ranks below, for example, a preferred ship mortgage.[49] And the State again ignores the

---

**44.** *See* 510 U.S. at 57, 114 S.Ct. 492. The Court did say, as the State notes, that one of "the Government's legitimate interests at the inception of forfeiture proceedings [is] to ensure that the property not be ... used for further illegal activity prior to the forfeiture judgment." *Id.* at 58, 114 S.Ct. 492. But the State has quoted that passage out of context, for *Good* goes on to say that this "legitimate interest[ ] can be secured without seizing the subject property," *id.,* because "the Government can forestall further illegal activity with search and arrest warrants." *Id.* at 59, 114 S.Ct. 492.

**45.** *Cf. id.* at 59, 114 S.Ct. 492 (noting that, while Government's preforfeiture interests include preventing destruction of *res*, its "policy of leaving occupants in possession of real property ... pending the final forfeiture ruling demonstrates

that there is no serious concern about destruction in the ordinary case").

**46.** *F/V American Eagle v. State,* 620 P.2d 657, 667 (Alaska 1980).

**47.** *Cf. Good,* 510 U.S. at 59, 114 S.Ct. 492 ("Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden. A claimant is already entitled to an adversary hearing before a final judgment of forfeiture.").

**48.** *See supra* note 17.

**49.** It is settled that "federal, state and local [tax liens], being nonmaritime, are subordinate to all maritime liens ... whether the maritime liens

relevant time frame: that between the time of an *ex parte* seizure, and the time of a post-hearing seizure. Only for that brief period would the State be at risk of boats accruing maritime liens that would reduce its forfeiture proceeds.

(6) *Summary.* The State's only significant interest in proceeding *ex parte* is thus to avoid the risk of owners removing or concealing their boats upon receiving notice of a seizure hearing.

ii. *The private interest*

The State does not discuss the private interest at stake, and Waiste is plainly right that it is significant: even a few days' lost fishing during a three-week salmon run is serious, and due process mandates heightened solicitude when someone is deprived of her or his primary source of income.[50]

iii. *The reduction in the risk of erroneous deprivation*

The State similarly does not dispute that a preseizure hearing will significantly reduce the risk of an erroneous seizure. As *Good* noted, "[t]he practice of *ex parte* seizure . . . creates an unacceptable risk of error."[51] Indeed, for the State to argue otherwise in this case would be to risk looking foolish, given AAG Nelson's significant error in thinking Big Creek a salmon-spawning stream. It is not surprising that the magistrate who issued

the seizure warrant did not, in an *ex parte* hearing, happen to notice and correct that error *sua sponte.*

The State does note that executive officials, not private parties, make the decision to seek a seizure, and that a magistrate or judge, not a court clerk, reviews it. This is the third consideration that the *Calero–Toledo* Court stressed in finding the *ex parte* seizure at issue there acceptable.[52] Those facts do avoid the risks of serious abuse that inhered in prejudgment attachment schemes, struck down by the Supreme Court and this court, that once allowed private parties unilaterally to employ a court's power to attach property with no review by a judicial officer.[53] But it does not fully remedy the basic flaws in *ex parte* proceedings. ° As Justice Frankfurter observed, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."[54] As the *Good* Court noted, moreover, the protection of an adversary hearing "is of particular importance [in forfeiture cases], where the Government has a direct pecuniary interest in the outcome."[55] Nonetheless, the government officials involved have less personal stake in the outcome than private litigants would have. This factor mitigates, but does not eliminate, the risk of error inherent in *ex parte* proceedings.

arise before or after the governmental claim." Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 9–73 (1975). Since tax liens do not defeat later-accrued maritime liens, it seems unlikely that forfeiture claims should. Indeed, in ranking the priority of maritime liens, one commentator puts "[m]aritime liens for penalties and forfeiture for violation of federal statutes" eighth, and "[s]tate-created liens of [a] maritime nature" seventh. *See* George Varian, *Rank and Priority of Maritime Liens,* 47 Tulane L.Rev. 751, 753 (1973).

**50.** *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *F/V American Eagle,* 620 P.2d at 666–67 ("[W]hen the seized property is used by its owner in earning a livelihood, notice and an unconditioned opportunity to contest the state's reasons for seizing the property must follow the seizure within days, if not hours, to satisfy due process guarantees even where the government interest in the seizure is urgent.").

**51.** *Good,* 510 U.S. at 55, 114 S.Ct. 492.

**52.** *See* 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**53.** *Cf., e.g., Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 91, 93, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Etheredge v. Bradley,* 502 P.2d 146, 153 (Alaska 1972) (noting lack of "any mechanism for review of the necessity and justification for the seizure by a responsible government official").

**54.** *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 170–72, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

**55.** *Good,* 510 U.S. at 55–56, 114 S.Ct. 492.

#### iv. *Conclusion*

We must decide whether the private interest in avoiding the erroneous detention of a fishing boat for several days of a brief fishing season, given the risk of error in an *ex parte* hearing held by a magistrate and initiated by a State attorney, outweighs the State's interest in ensuring that fishing-boat owners not remove or conceal their boats to avoid forfeiture. Waiste argues plausibly that the private interest outweighs the State interest, but not persuasively enough to convince us to become the first court to expand the rule of *Good* beyond real property.[56] An ensemble of procedural rules bounds the State's discretion to seize vessels and limits the risk and duration of harmful errors. The rules include the need to show probable cause to think a vessel forfeitable in an *ex parte* hearing before a neutral magistrate, to allow release of the vessel on bond, and to afford a prompt postseizure hearing. That ensemble is undeniably less effective than a prior, adversarial hearing in protecting fishers from the significant harm of the erroneous seizure and detention of a fishing boat. The facts of this case may illustrate that point. But we do not balance the State and private interests and risk of error in this case, in hindsight. Rather, we balance the State's interest in avoiding removal or concealment with the likelihood and gravity of error in the relevant class of cases, and, in so doing, we hold that a blanket rule of *ex parte* seizure comports with due process.

> **2.** *The State did not violate AS 16.05.190–.195 by retaining Waiste's boat after his acquittal.*

Waiste argues that AS 16.05.190, which governs the seizure and disposition of equipment used in fishing violations, required the State to return his boat once the criminal case had ended. The statute says that items "seized under the provisions of this chapter ... unless forfeited by an order of the court, *shall* be returned, after completion of *the case* and payment of the fine, if any."[57] Waiste argues that "the case" means the criminal case. The State argues that "the case" encompasses both criminal and civil proceedings.

Waiste's argument on this point is unavailing. However one defines "the case" for purposes of AS 16.05.190, the State was not required to return Waiste's boat after his acquittal. This is so because the boat was seized not only for the purposes of the section .190 criminal proceeding, but also for the State's parallel section .195 civil forfeiture action. Because the latter proceeding had not been completed at the time of Waiste's acquittal, the State was not required to return the boat to him then; rather, the State had independent authority to retain it under section .195.

That the State was not seizing the boat only for the section .190 criminal proceeding is apparent from the record. The search warrant affidavit evinces the State's dual purpose in seizing the boat, citing both section .190 and section .195 as justification for the seizure.

Further, the language of section .195 strongly suggests that the State has the power to seize property for civil forfeiture purposes. Subsection .195(b) provides that "[i]tems specified in (a) of this section may be forfeited under this section regardless of *whether they were seized* before instituting

---

**56.** The legislature, of course, might conclude differently. It could exercise its broader fact-finding powers, and greater ability to tailor regulatory schemes to balance competing social interests, to delineate a class or classes of moveable property that, like real property, will not be subject to *ex parte* preforfeiture seizure.

**57.** AS 16.05.190 (emphasis added). The statute provides in part that equipment, including boats, used in or in aid of a violation of this chapter or a regulation of the department may be seized under a valid search, and all fish and game ... taken, transported, or possessed [ille-

gally] ... shall be seized.... Upon conviction of the offender or upon judgment of the court having jurisdiction that the item was taken, transported, or possessed [illegally] ..., all fish and game ... are forfeited to the state and shall be disposed of as directed by the court.... [Equipment, including boats,] seized under the provisions of this chapter or a regulation of the department, unless forfeited by order of the court, shall be returned, after completion of the case and payment of the fine, if any.

the forfeiture action." (Emphasis added.) The State must have the power to seize the property for this subsection to have any meaning, and it would make little sense to decide that this power arises purely from the State's power to seize under section .190, the quasi-criminal statute. Further, that the State has the power to seize property for the purposes of an *in rem* forfeiture action is a long-standing tenet of Alaska law.[58]

Beyond this analysis, to hold as Waiste would have us might create unfortunate results. If the State has no independent power to seize property for section .195 purposes, its only means of seizing equipment and contraband used in violation of the fish and game laws and regulations would be to institute criminal or quasi-criminal prosecutions. Surely there are many violations of these provisions that do not warrant such drastic measures, and would be more suited to a mere civil proceeding.

Therefore, even if we accept the proposition that "the case" in AS 16.05.190 refers to the criminal proceeding only, the State had independent authority to seize the vessel under AS 16.05.195 and could retain it after the charges were dismissed.

▆▆▆ Waiste's second statutory claim is that AS 16.05.195(d) forces the State to choose between criminal prosecution and civil forfeiture. This is untenable. Subsection .195(d) says that it is no defense to forfeiture "that the person who had the item . . . in possession at the time of its use and seizure has not been convicted or acquitted in a

criminal proceeding resulting from or arising out of its use." Waiste reads this to mean that, if the possessor-at-time-of-misuse *has* been "convicted or acquitted," that *is* a defense to forfeiture. That does not follow. The words "not been convicted or acquitted" clarify that the State may pursue a civil forfeiture even though it has not yet completed or even begun a criminal prosecution. They allow it to pursue civil forfeiture before or instead of prosecution; they do not forbid it to do both.

3. *The State did not violate Waiste's double jeopardy rights by continuing to pursue a civil in rem forfeiture after criminally prosecuting him.*

▆▆▆ Waiste argues that the State compensably violated his right under the Alaska Constitution not to be subject to double jeopardy. This is so, Waiste argues, because he was "put in 'jeopardy' when the State brought criminal charges against him [and][w]hen the criminal case was completed, further proceedings that placed Waiste and Ryan in 'jeopardy' within the meaning of Article I, section 9 were barred."

However, this argument also fails. Simply put, Waiste asks us to overrule or tortuously distinguish a near-controlling precedent[59] largely on the persuasive authority of two fairly recent Supreme Court opinions[60] whose rationales the Supreme Court itself, in a more recent opinion,[61] explicitly refused to combine as Waiste urges, instead holding that civil *in rem* forfeitures can almost never constitute punishment under the federal

---

58. *See United States v. Three Thousand Two Hundred Thirty-Six Dollars,* 167 F.Supp. 495, 497–98 (D.Alaska 1958) ("Where the object seized is capable of use in non-prohibited activity, the party seizing the object must file a libel in rem against the object and prove by the weight of evidence that the object was an implement of gambling in the context in which it was seized. This is necessary in order to perfect the seizure and forfeiture. It is the same type of procedure followed in admiralty practice where a ship is treated as a person for purpose of suit. Because the forfeiture action is a action in rem, separate from any criminal action brought in conjunction with the seizure, no prior conviction of the alleged owner is needed to sustain the action, and it can be maintained where the owner has been acquitted of the crime charged.") (citations omitted).

59. *See Resek v. State,* 706 P.2d 288 (Alaska 1985) (holding that civil *in rem* forfeiture under AS 17.30.110 of instrumentalities of drug crimes is not a criminal proceeding triggering right to counsel).

60. *See United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that fixed civil penalty can, in rare case, be so disproportionate to harm from misdeed as to constitute punishment for double jeopardy purposes); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding that civil *in rem* forfeiture constituted "excessive fine" violating Eighth Amendment).

61. *See United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Double Jeopardy Clause.[62] He asks us to do so, moreover, in a case not involving a forfeiture, but the allegedly improper retention of property to pursue a never-accomplished forfeiture. This we decline to do.

### 4. The State need not compensate Waiste for taking his profits by seizing his boat between the acquittal and the dismissal of the civil forfeiture action.

Waiste's next claim is that the State must compensate him for taking (i.e., preventing the generation of) his profits from his boat for the period between his acquittal and the boat's return. The State does not address this argument at all.[63]

■ We liberally interpret Alaska's Takings Clause in favor of property owners, whom it protects more broadly than the federal Takings Clause.[64] The Clause's protection extends to personal as well as real property.[65] It ensures compensation for temporary as well as permanent takings.[66]

■ We have rejected traditional rules that do not comport with the primacy of full compensation, measured from a property owner's perspective, and with economic reality.[67] The finding of a taking, finally, depends on whether someone has been deprived of the economic benefits of ownership, not whether the State captures any of those benefits.[68]

■ Relying on these principles, and our broad, flexible approach to takings jurisprudence, Waiste argues that when the State retained his boat following his criminal acquittal, it thereby "took" not only the boat itself, but the stream of income that that capital asset would have produced in the period that the State held it. The State has partially compensated Waiste for this taking by returning the boat, but, according to Waiste, it will not have fully compensated him until it gives him the monetary equivalent of the stream of income that it prevented.

But we conclude that Waiste's loss of profits due to the State's retention of the boat cannot properly be characterized as a taking. There is no question that the State was empowered by AS 16.05.195 to keep the boat for purposes of the in rem action. There is

---

62. See id. at 291–92, 116 S.Ct. 2135. Since Waiste filed his briefs, moreover, the Supreme Court has further undermined his argument by overruling the part of *Halper* that had relaxed the traditionally strict presumption that nominally civil proceedings cannot constitute punishment for double jeopardy purposes. See *Hudson v. United States*, 522 U.S. 93, 95–96, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (disavowing *Halper*, 490 U.S. at 448, 109 S.Ct. 1892 (focusing on whether civil sanction is "punitive" or "remedial")) (stating that punitive character is irrelevant unless double jeopardy claimant shows that Congress intended penalty to be criminal or presents "clearest proof" that statutory scheme *as a whole* is so punitive in purpose or effect as to constitute a criminal penalty despite civil label).

63. Waiste unfortunately muddies this simple claim by arguing that, since we have held that Alaska's Due Process Clause requires the State to afford "innocent" owners a remission procedure in forfeiture schemes, see *State v. Rice*, 626 P.2d 104, 113 (Alaska 1981), and since remission is impossible for owners like him who suffer a taking but not a forfeiture, we should order compensation under the Takings Clause as a substitute for remission. This is the only part of his takings claim that the State rebuts. This is a needless complication of the issue. Similarly, whether Waiste technically qualifies as an "innocent owner" under *Rice* and *Fehir v. State*, 755 P.2d 1107, 1109 (Alaska 1988), is irrelevant, though his "innocence" or culpability, in general, may be relevant to a takings inquiry.

64. See, e.g., *Anchorage v. Sandberg*, 861 P.2d 554, 557 (Alaska 1993) (citing *State v. Doyle*, 735 P.2d 733, 736 (Alaska 1987) and *State v. Hammer*, 550 P.2d 820, 824 (Alaska 1976) (noting that unlike federal Clause, Alaska's Takings Clause mentions "damage[ ]" as well as "tak[ing]")).

65. See *Hammer*, 550 P.2d at 826 (treating ongoing business, divorced from specific realty, as "property"); *State v. Ness*, 516 P.2d 1212, 1214 & n. 9 (Alaska 1973); cf. *DeLisio v. Alaska Super. Ct.*, 740 P.2d 437, 440–41 (Alaska 1987) (holding services to be property under the Takings Clause and deeming contrary traditional rule "manifestly unreasonable").

66. See, e.g., *Cannone v. Noey*, 867 P.2d 797, 800 & n. 3 (Alaska 1994); *Hammer*, 550 P.2d at 827.

67. See, e.g., *DeLisio*, 740 P.2d at 440–43; *Hammer*, 550 P.2d at 823–26; *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1246–47 (Alaska 1974) (approving New Jersey's "provocative departure from established precedent" in establishing "analysis sensitive to the economic realities of public condemnation") (adopting *State v. Nordstrom*, 54 N.J. 50, 253 A.2d 163 (1969)).

68. See *Stewart & Grindle*, 524 P.2d at 1248.

also no question that the State seized the boat pursuant to a valid warrant. An *in rem* action under section .195 is not an exercise of the State's constitutional taking power for which the Takings Clause triggers the requirement of just compensation. Rather, that law is an exercise of the State's police powers. As the Oregon Supreme Court observed:

> Not every acquisition of a private property interest by the state constitutes a taking . . .; through the lawful exercise of other powers available to it, *e.g.*, the taxing power, the "police power," or the power to purchase property, the state may, consistently with constitutional requirements, acquire private property interests in a manner that does not constitute a taking. Ordinarily, when the government acquires such an interest through a power other than its taking power, just compensation is not constitutionally required.[69]

In *State ex rel. Schrunk v. Metz*, the Oregon Court of Appeals was faced with facts similar to Waiste's.[70] There, the state had seized two restaurants where gambling activities were suspected of taking place.[71] The state eventually dismissed its forfeiture action, and the court returned the restaurants to the owners.[72] The owners sued, arguing that the seizure of the assets was a taking.[73] The court held:

> Oregon's civil forfeiture law, which operates to make illicit behavior unprofitable and to thwart the continued unlawful·use

of property, fosters the purposes served by the criminal laws and is directed primarily at the prevention of serious public harm and the preservation of the public welfare. As such, it is a permissible police power regulation. Because the seizure and ultimate forfeiture of property under [Oregon's cognate to AS 16.05.195] is not accomplished by the power of eminent domain, but is instead undertaken in the exercise of the police power, any acquisition of defendants' properties that may have resulted from the court ordered seizures did not constitute a "taking" of property. . . . [74]

The distinction between eminent domain and the state's police power is well established legal doctrine, as is the notion that government seizure of property suspected of having been used to break the law falls squarely within the police power.[75] Therefore, we hold that Waiste is not entitled to the profits he would have received had he been able to fish during the period between his acquittal and the boat's return.

## IV. CONCLUSION

The superior court's decision is AFFIRMED.

FABE, Justice, not participating.

---

69. *Hughes v. State*, 314 Or. 1, 838 P.2d 1018, 1037 (1992) (citations omitted).

70. 125 Or.App. 405, 867 P.2d 503 (1993).

71. *See id.* at 506.

72. *See id.* at 507.

73. *See id.* at 508.

74. *Id.*

75. *See Lawton v. Steele*, 152 U.S. 133, 138, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (upholding the power of the state to seize and destroy fishing nets used in violation of fish and game laws, holding: "The preservation of game and fish . . . has always been treated as within the proper domain of the police power. . . ."); *United States v. One 1962 Ford Thunderbird*, 232 F.Supp. 1019,

1022 (N.D.Ill.1964) ("Where Congress, in the implementation of its constitutional powers, provides for penalties such as forfeitures, such action is not a taking of property in a constitutional sense. It is not an instance of eminent domain, in which property is taken because the *use of such property* is beneficial to the public. Rather, the property interest is infringed because Congress has deemed it necessary in order to preserve other incidents of the public welfare. As such, it represents a federal exercise of a police power to which the constitutional requirement of compensation is inapplicable."); *United States v. One 1961 Cadillac Hardtop Automobile*, 207 F.Supp. 693, 699 (E.D.Tenn.1962) ("forfeitures of property used in violation of law is generally not a denial of due process of law or a violation of the constitutional prohibition against the taking of private property for public use without fair compensation"); *see also* Joseph L. Sax, *Takings and the Police Power*, 74 Yale L.J. 36, 36 n. 6 (1964).