FRIENDS OF WILLOW LAKE,
INC., Appellant,

v.

STATE of Alaska, DEPARTMENT OF
TRANSPORTATION & PUBLIC FA-
CILITIES, DIVISION OF AVIATION &
AIRPORTS, and BAL, Inc., d/b/a Willow
Air, Appellees.

No. S–14018.

Supreme Court of Alaska.

July 20, 2012.

William F. Brattain II, Baker Brattain LLC, Anchorage, for Appellant.

L. Anmei Goldsmith, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee State of Alaska.

David D. Clark, Law Office of David Clark, Anchorage, for Appellee BAL, Inc.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

After the State of Alaska issued a plan for summer-use rules at Willow Lake, which the State operates as a float plane facility, a non-profit corporation brought suit against the State and a float plane operator, alleging: (1) the State's plan was unconstitutional, improperly issued, and preempted by federal navigable water and aviation laws; and (2) the float plane operations created a public nuisance. The superior court granted summary judgment on the basis that the corporation lacked standing to bring its claims, but further concluded that the use plan was properly issued and not preempted by federal navigable water law. We affirm the superior court's ruling that the use plan was not a regulation required to be promulgated under formal administrative procedures. But because the corporation had associational standing and there was insufficient development of the record for the preemption ruling, we reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Willow Lake is located west of the Parks Highway, across the highway from the Willow Airport. The State of Alaska, Department of Transportation and Public Facilities (DOT & PF) manages Willow Lake as a float plane facility. BAL, Inc., d/b/a Willow Air, uses Willow Lake for commercial flight operations.

In October 2005 DOT & PF held a public meeting to address concerns between lakefront (riparian) property owners and aircraft operators, specifically Willow Air. In October 2007 another public meeting was held to present findings from a Willow Lake noise study assessing aircraft noise and potential mitigation measures.

In a November 2007 letter, a DOT & PF commissioner expressed regret that "a local level resolution" had been unsuccessful and indicated that a use plan "must be developed and implemented to allow everyone the enjoyment [of] using the Lake that they have experienced over the years." The commissioner stated that DOT & PF would not terminate commercial air operations or designate runways on the lake, the latter requiring adherence to federal airport criteria and the purchase of lands and buildings to create unobstructed runway safety areas. But he

indicated DOT & PF intended to permit public use of the lake as long as it did not compromise aircraft safety.

In January 2008 DOT & PF held a public meeting to review a draft Willow Lake Use Plan (WLUP). Later that month DOT & PF distributed a letter stating the WLUP would not be necessary "[i]f there is agreement and satisfaction on both sides as to using the lake and everyone agrees to maintain vigilance, cooperation, and self enforcement." DOT & PF required the working plan, if one could be agreed on, to be presented by March 2008; otherwise a written plan would be necessary and the public would be "given an opportunity to develop the written plan that takes into consideration both user categories." A private working plan was not presented, and DOT & PF eventually issued a final WLUP in April 2008.

The WLUP sets forth summer-use rules for Willow Lake's recreational and aircraft users. Recreational users are required to look for and avoid aircraft and advised to avoid the lake's center, where aircraft take off and land. Aircraft users are prohibited from operating in a particular area of the lake, and also are prohibited from operating within 100 feet of the shore unless taxiing, preparing to take off, landing, or staying within a designated warm-up area. The WLUP also recommends that aircraft take off towards the south, if possible, and to otherwise take off and land in a "generally northerly/southerly direction."

Friends of Willow Lake, Inc. (FOWL) is a non-profit corporation "formed [in June 2008] for the express purpose of protecting the interest of the users of Willow Lake." FOWL's stated purpose is "to promote the preservation and protection of common access, property rights and multi-use, including aviation activities, of Willow Lake." Its members are Alaska residents and Willow Lake users. Some members own riparian property on Willow Lake, but FOWL itself does not.

In September 2008 FOWL filed suit against DOT & PF and Willow Air, alleging: (1) the WLUP violated the Alaska Constitution, was improperly issued, and was preempted by federal navigable water and aviation laws; and (2) Willow Air's use of high-performance propellers on its aircraft, with DOT & PF's authorization, created a public nuisance. FOWL sought declaratory and injunctive relief.

DOT & PF moved for summary judgment, seeking declarations that: (1) it had authority to promulgate the WLUP; and (2) FOWL lacked standing to bring suit. Willow Air moved to dismiss the suit on the basis that FOWL was not the real party in interest. FOWL opposed the motions.

The superior court granted DOT & PF's summary judgment motion and Willow Air's motion to dismiss on the basis that FOWL lacked both interest-injury and citizen-taxpayer standing. The court also concluded that the rulemaking requirements of the Alaska Administrative Procedure Act (APA) were not applicable to the WLUP because the plan was discretionary action and "a common sense exercise of [DOT & PF's] authority on its own terms which [did] not add new requirements to the already existing law." The court further ruled the WLUP "would not be void by virtue of the U.S. Coast Guard inland navigation rules because the Coast Guard does not consider Willow Lake a navigable water." It later awarded DOT & PF and Willow Air Alaska Civil Rule 82 attorney's fees and costs.

FOWL appeals, arguing the superior court erred in: (1) ruling FOWL lacked standing; (2) concluding the WLUP was properly issued; (3) concluding Willow Lake was not under Coast Guard jurisdiction; and (4) awarding attorney's fees and costs against it. FOWL also argues the WLUP conflicted with and was preempted by the Federal Aviation Act, an issue the superior court did not address. Because the parties did not address associational standing in the superior court or in their briefs to us, we asked for supplemental briefing on that issue.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, with the facts reviewed in the light most favorable to the non-moving

party.[1] A grant of summary judgment is affirmed "when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law."[2] Issues of standing are questions of law that we review de novo.[3] We review de novo questions of statutory construction,[4] including "whether an agency action constitutes a 'regulation' that must be promulgated in compliance with the APA."[5] Whether a particular body of water is a navigable water of the United States is a question of federal law,[6] which we review de novo.[7]

## IV. DISCUSSION

### A. Associational Standing

#### 1. Overview

▆▆▆ "Standing is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[8] However, "[t]he concept of standing has been interpreted broadly in Alaska,"[9] with adversity being the basic requirement.[10] We recognize two general types of standing: citizen-taxpayer standing

and interest-injury standing.[11] We also recognize that under special circumstances, a litigant may assert third-party standing to raise the rights of a third person.[12] In *Alaskans for a Common Language, Inc. v. Kritz*,[13] we recognized and specified criteria for associational standing, allowing a group to represent its members' interests; we stated that:

> an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[14]

#### 2. FOWL members have interest-injury standing.

▆▆▆ Interest-injury standing is established if plaintiffs "have a sufficient personal stake in the outcome of the controversy and an interest which is adversely affected by the complained-of conduct."[15] The degree of in-

1. *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

2. *Id.* (quoting *Rockstad*, 113 P.3d at 1219).

3. *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1254–55 (Alaska 2010) (citing *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009)).

4. *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1014 (Alaska 2010) (quoting *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1020 (Alaska 2009)).

5. *Id.* (citing *Alaska Ctr. for the Env't v. State*, 80 P.3d 231, 243 (Alaska 2003)).

6. *Alaska v. United States*, 754 F.2d 851, 853 (9th Cir.1985) (citing *Utah v. United States*, 403 U.S. 9, 10, 91 S.Ct. 1775, 29 L.Ed.2d 279 (1971)).

7. *Cf. Nunez v. Am. Seafoods*, 52 P.3d 720, 721 (Alaska 2002) ("We also review de novo whether a fishing agreement complies with relevant federal admiralty law.").

8. *Law Project for Psychiatric Rights*, 239 P.3d at 1255 (quoting *Keller*, 205 P.3d at 302) (internal quotation marks omitted).

9. *Fannon v. Matanuska–Susitna Borough*, 192 P.3d 982, 985 (Alaska 2008) (quoting *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough*, 850 P.2d 636, 639 (Alaska 1993)).

10. *Trs. for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987) (citing *Moore v. State*, 553 P.2d 8, 24 n. 25 (Alaska 1976)).

11. *Law Project for Psychiatric Rights*, 239 P.3d at 1255.

12. *Id.* (citing *Foster v. State*, 752 P.2d 459, 466 (Alaska 1988) (Moore, J., concurring)); *see also State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 630 n. 9 (Alaska 1989) (stating third-party standing may be asserted where special relationship exists between plaintiff and third party, such as parent asserting minor child's constitutional rights, or when "the interested party's attempt to vindicate his rights would forfeit these very rights").

13. 3 P.3d 906, 915–16 (Alaska 2000).

14. *Id.* (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

15. *Keller*, 205 P.3d at 304 (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1040 (Alaska 2004); *Kritz*, 3 P.3d at 915) (internal quotation marks omitted).

jury need not be great—"an identifiable trifle" is a sufficient basis for standing.[16] The affected interest may be economic or intangible, such as an aesthetic or environmental interest.[17]

FOWL alleges the WLUP violates several constitutional provisions, specifically the protected common use of and free access to public waters.[18] Alleged infringement of constitutional rights is a significant injury to a proper interest,[19] and FOWL's members, especially its riparian landowners, have economic and aesthetic interests in the WLUP's validity and enforcement. Similarly, FOWL's public nuisance claim represents a sufficient injury to FOWL's riparian landowner members' interest in the quiet enjoyment of their land. We therefore conclude that at least FOWL's riparian members would have interest-injury standing if they brought this suit; we do not need to address FOWL's argument that its members also have citizen-taxpayer standing.

### 3. FOWL seeks to protect interests germane to its purpose.

■ DOT & PF does not challenge that FOWL seeks to protect interests germane to its purpose. But Willow Air argues FOWL has no activities unrelated to this litigation and so cannot claim to protect common access to Willow Lake. We disagree with Willow Air's premise.

The United States Supreme Court has recognized that "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."[20] Another court has stated germaneness requires pertinence or a connection but does not go so far as to

require that the issue be central to or substantially overlap with the organization's purpose.[21] In *Kritz* the association was incorporated to "promote the use of English as the official language of the State of Alaska"; we stated the enactment of a ballot initiative requiring the government to use English was "not only 'germane' to [the association's] organizational purposes, it [was] its primary organizational purpose."[22]

FOWL is a non-profit corporation whose stated purpose is "to promote the preservation and protection of common access, property rights and multi-use ... [on] Willow Lake." FOWL's claims challenging the WLUP not only are pertinent to its purpose, they are its primary organizational purpose. While its public nuisance claim may not be central to its purpose, it is pertinent and connected to preserving and protecting common access to and enjoyment of Willow Lake. Accordingly, we conclude FOWL's claims are germane to its purpose.

### 4. Participation of individual FOWL members is not required.

■ DOT & PF argues that associational standing's third prong is only "met if the issue in the case is a pure question of law that does not require factual testimony from the organization's members." Although it acknowledges that FOWL's claims focus on constitutional and statutory issues, DOT & PF argues FOWL "also include[s] claims of damages that cannot be established without testimony from the common users about their injuries." It argues FOWL cannot prevail without its members introducing evidence of injuries suffered, thus requiring their availability as witnesses. Willow Air

16. *Trs. for Alaska,* 736 P.2d at 327.

17. *Id.* (citing *State v. Lewis,* 559 P.2d 630, 635 (Alaska 1977)).

18. Article VIII, section 3 of the Alaska Constitution provides that the State's "waters are reserved to the people for common use." And article VIII, section 14 provides all U.S. citizens "[f]ree access to the navigable or public waters of the State."

19. *See Trask v. Ketchikan Gateway Borough,* 253 P.3d 616, 620 (Alaska 2011) (finding interest-injury standing established because plaintiff al-

leged her First Amendment rights were violated by enforcement action aimed directly at her).

20. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock,* 477 U.S. 274, 290, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

21. *Humane Soc'y of the U.S. v. Hodel,* 840 F.2d 45, 56–57 (D.C.Cir.1988).

22. *Kritz,* 3 P.3d at 915.

similarly argues member testimony is required to prove a public nuisance and any relief available to particular members.

In *Kritz* we stated "the constitutionality of the [ballot] initiative is a pure question of law which will not require direct testimony or other participation by [the organization's incorporators]."[23] But contrary to DOT & PF's and Willow Air's suggestions, we did not hold that associational standing is *only* proper with pure questions of law. Because we had before us only a pure question of law, we did not address whether disputed factual issues meant an association could not satisfy this prong.

The United States Supreme Court has stated associational standing may be proper "so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause."[24] It has further stated that this prong "is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."[25] Accordingly, federal courts have concluded that participation by some, but not all, individual members in a suit to provide discovery and testimony at trial does not provide a basis for denying associational standing.[26] We agree.

FOWL's constitutional and statutory claims are mostly questions of law. The factual issues, if any, for these claims do not necessarily require the participation of individual members. While FOWL's public nuisance claim encompasses factual issues, primarily whether Willow Air's aviation operation creates "an unreasonable interference with a right common to the general public,"[27] it does not necessarily require participation by all individual members. In fact, the record will likely center around the study assessing aircraft noise at Willow Lake and potential mitigation measures. Furthermore, FOWL seeks declaratory and injunctive relief and not, as DOT & PF suggests, damages for its members.[28] Accordingly, FOWL satisfies this prong of associational standing.

### 5. Conclusion

We conclude FOWL has associational standing to bring this suit on its members' behalf. Should FOWL's claims change, the superior court is not foreclosed from considering anew the application of associational standing to the changed claims.

### B. APA's Rulemaking Requirements

[15, 16] The APA "establish[es] basic minimum procedural requirements for the adoption, amendment, or repeal of administrative regulations."[29] It requires agencies to give notice of proposed actions,[30] hold a public hearing and allow interested persons to submit comments,[31] and file adopted regulations with the lieutenant governor.[32] "The APA is meant to reduce the risk of arbitrary application and to inform the public of regulations."[33] An agency's failure to satisfy the

**23.** *Id.* at 915–16.

**24.** *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

**25.** *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

**26.** *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 601–02 (7th Cir.1993); *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89–90 (3d Cir.1991).

**27.** Restatement (Second) of Torts § 821B(1) (1979) (defining public nuisance).

**28.** *See Warth*, 422 U.S. at 515, 95 S.Ct. 2197 ("If ... the association seeks ... prospective relief, ... the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.").

**29.** AS 44.62.280.

**30.** AS 44.62.190; *see also* AS 44.62.200 (establishing content requirements for the notice given).

**31.** AS 44.62.210.

**32.** AS 44.62.040.

**33.** *Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors*, 205 P.3d 326, 335 (Alaska 2009).

APA's procedural requirements renders its action invalid.[34]

 APA compliance is not required if an agency's action does not constitute a "regulation."[35] The APA defines a regulation as "every rule, regulation, order, or standard of general application or [any] amendment, supplement, or revision" thereof.[36] "Although the definition of 'regulation' is broad, it does not encompass every routine, predictable interpretation of a statute by an agency."[37] We examine the "character and use" of the agency's action[38]—"a common sense interpretation of [a] regulation's applicability" is not a regulation, so long as it does not provide "new requirements nor [make] the existing ones any more specific."[39]

### 1. The WLUP is not a "regulation."

 The superior court concluded the WLUP is not a regulation, noting DOT & PF is authorized to regulate airports, air navigation facilities, and float plane facilities, and that the WLUP is "a common sense exercise of this authority on its own terms which does not add new requirements to the already existing law."[40] FOWL argues the WLUP is a regulation and that it was not promulgated in compliance with the APA. DOT & PF responds "that the WLUP is valid as a common sense synthesis of [its] pre-existing powers, rather than an expression of new rules."

DOT & PF argues it "issued the WLUP in accordance with regulations providing [DOT & PF] with general police powers over rural airports," and these police powers include "broad powers over planning, operation, regulation, protection, and policing of airports."

In *Alyeska Pipeline Service Co. v. State, Department of Environmental Conservation* we held an agency's policy allowing it to recoup costs incurred in defending permit appeals was not a regulation requiring APA compliance.[41] We stated that "obvious, commonsense interpretations of statutes do not require rulemaking,"[42] but APA compliance is required for "cases in which an agency's interpretation of a statute is expansive or unforeseeable, or in cases in which an agency alters its previous interpretation of a statute."[43] We explained that "[n]early every agency action is based, implicitly or explicitly, on an interpretation of a statute or regulation authorizing it to act. A requirement that each such interpretation be preceded by rulemaking would result in complete ossification of the regulatory state."[44]

The legislature has given DOT & PF broad authority to "plan, establish, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police airports."[45] With this authority DOT & PF has promulgated regulations requiring persons using an air-

---

34. *Smart,* 237 P.3d at 1017 (citing *Jerrel v. State, Dep't of Natural Res.,* 999 P.2d 138, 144 (Alaska 2000)).

35. *Id.*

36. AS 44.62.640(a)(3).

37. *Smart,* 237 P.3d at 1017 (quoting *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation,* 145 P.3d 561, 573 (Alaska 2006)).

38. *Squires,* 205 P.3d at 333 (quoting *Jerrel,* 999 P.2d at 143).

39. *Alaska Ctr. for the Env't v. State,* 80 P.3d 231, 244 (Alaska 2003) (finding an agency interpretation was not a "regulation" because it "was not an addition to a regulation involving requirements of substance ... it was the interpretation of the regulation according to its own terms." (quoting *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Res.,* 921 P.2d 1134, 1149 n. 24 (Alaska 1996))).

40. The superior court also stated the WLUP was discretionary action, suggesting such action does not require compliance with the APA. The discretionary function exception immunizes the State from tort actions "based upon the exercise or performance or the failure to exercise or perform a discretionary function." AS 09.50.250(1). It does not exempt agency regulatory action from APA compliance.

41. 145 P.3d 561, 572–73 (Alaska 2006).

42. *Id.* at 573 (citing *Alaska Ctr. for the Env't,* 80 P.3d at 244).

43. *Id.*

44. *Id.*

45. AS 02.15.060.

port to comply with posted instructions, requirements, and restrictions.[46]

DOT & PF's airport regulations require using a "public area only as the department designates for the activity, class of traffic, or mode of travel in which the person is engaged."[47] In addition, "[t]he department may ... authorize, restrict, or prohibit air carrier operations ... or other uses in designated areas of airport land."[48] Prior approval is required to "moor, load, unload, launch, operate, or test a boat or boat motor in a body of water that is part of an airport float plane facility."[49] DOT & PF's regulations also require aircraft to confine their operation to "designated runways, water lanes, helipads, taxiways, taxi lanes, aprons, and aircraft parking areas."[50] As found "necessary for safe and secure operation of the airport, the airport manager may by control device or order regulate, control, and direct the availability of a runway, water lane, helipad, taxiway, taxi lane, apron, and aircraft parking area on an airport."[51]

As in *Alaska Center for the Environment*, the WLUP is better characterized as a common sense interpretation of DOT & PF's existing regulations, and not a regulation itself; it constitutes the official notice of airport instructions, requirements, and restrictions. Each airport, especially each float plane facility, requires individualized and common sense interpretations of DOT & PF's regulations to facilitate and ensure its safe and secure operation. Otherwise any slight change in runways or taxi lanes or general rules pertaining to the public use of an airport would require promulgation pursuant to the APA, which would "result in complete ossification" of airport operations.

### 2. 17 AAC 45.140 did not require compliance with the APA.

FOWL notes DOT & PF's authority to develop a program to minimize local effects of aircraft noise,[52] and argues DOT & PF has not "disputed the WLUP was adopted, in part, to respond to and address the excessive noise complaint concerns of the landowners, ... as reflected in the 2007 Noise Study." FOWL argues the superior court failed to consider DOT & PF's non-compliance with 17 AAC 45.140, requiring DOT & PF to "follow the procedures of [the APA] in developing a noise compatibility program."[53]

DOT & PF argues it was not required to comply with 17 AAC 45.140 in adopting the WLUP. It argues a "noise compatibility program" is not required for every action it takes with respect to aircraft noise. DOT & PF states 49 U.S.C. § 47504 invites airport operators to take preliminary steps to address noise problems before developing a noise compatibility program, "such as controlling the operation of aircraft to reduce noise around the airport and restricting the use of the airport by a type or class of aircraft." DOT & PF argues its "powers include controlling air traffic patterns (such as restricting take offs and landings to north-south) and restricting the use of an airport by type of aircraft (or by choosing *not* to restrict aircraft)." Because the WLUP "only attempts to mediate the conflicting uses of Willow Lake in a way that takes into account the noise concerns of some of the lake users," DOT & PF argues "17 AAC 45.140 does not require that a noise compatibility program be developed for the WLUP."

DOT & PF has the better argument. Noise compatibility programs under 14 C.F.R. § 150.23 are voluntary regulations

---

46. 17 Alaska Administrative Code (AAC) 45.020(a)(1)(C) (2009).

47. 17 AAC 45.020(a)(3)(A).

48. 17 AAC 45.020(c).

49. 17 AAC 45.020(h).

50. 17 AAC 45.030(b).

51. *Id.*

52. 17 AAC 45.140(a) (2009) states:

> If [DOT & PF] determines that it is in the best interest of the state and of members of the public living or working in areas near the airport that are or may be affected by noise from aircraft using the airport, the department will develop a program to improve compatibility between the operation of those aircraft and the surrounding community.

53. 17 AAC 45.140(b).

prescribing airport planning procedures for federal funding of noise compatibility measures.[54] Under 17 AAC 45.140(a) DOT & PF has discretion to develop a noise compatibility program,[55] and APA compliance is only required if DOT & PF decides to develop a noise compatibility program. But DOT & PF's regulations contemplate preliminary steps to reduce aircraft noise before development of a noise compatibility program. In addition, 17 AAC 45.030(c) expressly acknowledges that DOT & PF may issue orders affecting aircraft noise. We therefore agree with DOT & PF that the WLUP is not a noise compatibility program.

## C. Coast Guard Inland Navigation Rules

The United States Coast Guard Inland Navigation Rules "apply to all vessels upon the inland waters of the United States."[56] These rules are "designed to prevent collision[s]" and "anyone who undertakes operation of vessels on navigable waters is charged with knowledge of [them] and a mandatory duty to obey them."[57] They define inland waters as "the navigable waters of the United States shoreward of the navigational demarcation lines dividing the high seas from harbors, rivers, and other inland waters of the United States."[58] The Coast Guard defines navigable waters of the United States, in relevant part, as:

Internal waters of the United States not subject to tidal influence that:

(i) Are or have been used, or are or have been susceptible for use, by themselves or in connection with other waters, as highways for substantial interstate or foreign commerce, notwithstanding natural or man-made obstructions that require portage, or

(ii) A governmental or non-governmental body, having expertise in waterway improvement, determines to be capable of improvement at a reasonable cost (a favorable balance between cost and need) to provide, by themselves or in connection with other waters, as highways for substantial interstate or foreign commerce.[59]

The superior court ruled the WLUP "would not be void by virtue of the U.S. Coast Guard inland navigation rules because the Coast Guard does not consider Willow Lake a navigable water." The court based its ruling on an exhibit listing Willow Creek, but not Willow Lake, as a navigable internal water.

FOWL argues the superior court erred by "simply assum[ing] that since Willow Lake was not on the list of waterbodies under Coast Guard jurisdiction, its inquiry was over." It argues that as a navigable water, the Inland Navigation Rules apply to float planes on Willow Lake, preempting and taking priority over conflicting state laws, regulations, or practices. In particular, FOWL argues the WLUP conflicts with Coast Guard right-of-way rules.

Because the record is insufficiently developed on this point, we are unable to determine whether Willow Lake is a navigable inland water subject to the Inland Navigation Rules. As DOT & PF conceded at oral argument before us, the mere omission of

**54.** *See* 14 C.F.R. § 150.23(a) (2011) (*"Any* airport operator who has submitted an acceptable noise exposure map … *may* …. submit … a noise compatibility program." (emphasis added)); *see also* 49 U.S.C. § 47108(b)(3) (describing projects receiving federal assistance under chapter 475, which establishes federal standards for noise exposure maps and noise compatibility programs).

**55.** 17 AAC 45.140(a) (*"If* [DOT & PF] *determines* that it is in the *best interest* of the state and [relevant public], the department will develop a program …." (emphasis added)).

**56.** 33 U.S.C. § 2001(a) (2006).

**57.** *Turecamo Mar., Inc. v. Weeks Dredge No. 516,* 872 F.Supp. 1215, 1229 (S.D.N.Y.1994) (citations omitted).

**58.** 33 U.S.C. § 2003(*o*) (2006).

**59.** 33 C.F.R. § 2.36(a)(3) (2011). For purposes of the Inland Navigation Rules and their applicability under the commerce clause, the definition of navigability "focuses upon *historic* navigability and capability of navigability." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 3–3, at 129 (5th ed. 2011) (emphasis in original). "In contrast, navigability for the purpose of admiralty jurisdiction [in federal courts] should focus upon current navigability and the possibility of interstate travel by water." *Id.*

Willow Lake from the Coast Guard's list of navigable internal waters is not sufficient evidence to support a ruling as a matter of law. Accordingly, we vacate the superior court's ruling and remand the issue for greater development and further consideration by the superior court.

### D. Federal Aviation Administration Preemption

FOWL argues the WLUP is invalid because it is preempted by Federal Aviation Administration rules and regulations. The superior court did not address this argument. We leave the unaddressed claim of Federal Aviation Administration preemption for the superior court's consideration on remand.

### E. Attorney's Fees

Because we conclude FOWL had associational standing and reverse the superior court's summary judgment orders on that basis, we vacate the award of attorney's fees. This decision renders moot FOWL's argument that it should be regarded as a public interest litigant and therefore not liable for attorney's fees; we do not address this argument.[60]

## V. CONCLUSION

We AFFIRM the superior court's ruling that the WLUP is not a regulation and was not required to be promulgated under the APA. We REVERSE the superior court's ruling that FOWL lacked standing to maintain its suit, VACATE its ruling regarding the Inland Navigation Rules, and VACATE the award of attorney's fees. We REMAND to the superior court for further proceedings.

CHRISTEN, Justice, not participating.

---

60. *Cf. State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 406 (Alaska 2007) (noting AS 09.60.010(b) "abrogates, in part, the public interest litigant exception"); *but see* AS 09.60.010(c) (establishing constitutional right litigation exception to Rule 82).