*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHELLE STONE BITTNER, | ) | |
| | ) | Supreme Court No. S-18944 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-07487 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, BOARD OF | ) | |
| GAME; and DOUGLAS VINCENT- | ) | No. 7745 – February 14, 2025 |
| LANG, COMMISSIONER, | ) | |
| DEPARTMENT OF FISH & GAME, in | ) | |
| an official capacity, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Michelle S. Bittner, Anchorage, Appellant. Cheryl R. Brooking, Senior Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I.  INTRODUCTION

A resident of Alaska filed a lawsuit to challenge amendments to the State's predator control program.  The resident alleged in her complaint that she returned to Katmai National Park to view bears after the implementation of the changes to the predator control program and observed that the brown bear population was noticeably smaller.  The superior court dismissed the complaint, concluding that the resident lacked standing and that she was not entitled to a declaratory judgment on the validity of the regulatory change.  The resident appeals dismissal of her lawsuit and an associated award of attorney's fees.

We hold that because the resident returned to Katmai National Park after the bear population was allegedly reduced by the State's program, she has alleged an injury to her interest in viewing bears there sufficient to demonstrate standing.  We also conclude that she is entitled to a declaratory judgment on the validity of the regulation. We reverse the dismissal of her complaint, vacate the associated award of attorney's fees, and remand for further proceedings.

## II.  FACTS AND PROCEEDINGS

### A.  Background

The State operates a predator control program in southwest Alaska through regulations adopted by the Board of Game (the Board) which are then implemented by the Alaska Department of Fish & Game (ADF&G).[1]  The goal of the program is to boost the population of the Mulchatna caribou herd by reducing the population of wild predators.[2]  Prior to the regulatory change at issue in this case, the

---

[1]  *See* AS 16.05.255(a); AS 16.05.020; AS 16.05.050.

[2]  *See* 5 Alaska Administrative Code (AAC) 92.111(c)(1).

program authorized the targeted killing of wolves on state land in an area southwest of Denali.[3]

In 2021 the Board announced that it would consider changes to the predator control program at its January 2022 meeting.[4] The Board gave notice of a plan by ADF&G, which the Board labeled Proposal 21, to expand the program to allow the targeted killing of wolves on federal lands adjacent to the program's existing geographic range.[5] The notice for Proposal 21 did not reference bears as a targeted species.[6] The deadline for submitting comments was January 7.[7]

During its meeting on January 24, ADF&G submitted an amendment to Proposal 21 — after the comment period had closed — that further expanded the program to allow the targeted killing of brown and black bears.[8] The Board adopted

---

[3] *See* former 5 AAC 92.111(c)(1) (2021) ("[This program] is designed to increase the caribou herd's population size and human harvest by reducing wolf predation on caribou and is expected to make a contribution to achieving the [intensive management] objectives in [Game Management] Units 9(B), 17(B), 17(C), 19(A), and 19(B)."); *Game Management Unit (GMU) Information*, ALASKA DEP'T OF FISH & GAME, https://www.adfg.alaska.gov/index.cfm?adfg=huntingmaps.gmuinfo (last visited Dec. 11, 2024) (indicating that GMUs 9(B), 17(C), 19(A), and 19(B) are southwest of Denali).

[4] ALASKA BD. OF GAME, NOTICE OF PROPOSED CHANGES IN THE REGULATIONS OF THE ALASKA BOARD OF GAME (2021), https://www.adfg.alaska.gov/static/regulations/regprocess/gameboard/pdfs/2021-2022/notice.pdf.

[5] *See* ALASKA BD. OF GAME, CENTRAL & SOUTHWEST REGION PROPOSALS, https://www.adfg.alaska.gov/static/regulations/regprocess/gameboard/pdfs/2021-2022/proposals/csw_all_22.pdf.

[6] *Id.*

[7] ALASKA BD. OF GAME, *supra* note 4.

[8] *See* ALASKA DEP'T OF FISH & GAME, DIV. OF WILDLIFE CONSERVATION, AMENDED LANGUAGE FOR PROPOSAL 21 (2022), https://www.adfg.alaska.gov/static/regulations/regprocess/gameboard/pdfs/2021-2022/csw/rcs/rc047_AKDFG_Ammended_Language_for_Proposal_21.pdf.

the amendment seven minutes after it was first read to the public.[9]   The regulation implementing these changes took effect in June 2022.[10]

### B.    Complaint

In July 2023 Michelle Bittner filed suit against the Board, challenging the changes to the predator control program.  Bittner alleged in her complaint that the Board's decision to approve the changes, including expansion of the program to target bears, violated both its constitutional and statutory duties.  First, she maintained that the Board violated its duty under the Alaska Constitution to manage and conserve wildlife for the benefit of all Alaskans.[11]  Second, she asserted that the Board violated the Alaska Administrative Procedure Act (APA) by failing to provide adequate notice and opportunities for public input before adopting the changes to the predator control program.

Bittner's complaint sought declaratory and injunctive relief, including a judgment that "the term 'use' in Article VIII, Section 3 [of the Alaska Constitution] includes both consumptive and non-consumptive uses of wildlife" and that the Board is required to consider "the interests of all Alaskans, including current and future generations, when it makes decisions related to wildlife in Alaska."

Bittner amended her complaint in August to name the Commissioner of ADF&G as an additional defendant and also added a request for an injunction "prohibiting the Commissioner from implementing any further predator control operations" under the challenged regulation.[12]   In paragraph 13 of her amended complaint, Bittner described her interest as follows:

---

[9]     *See* 5 AAC 92.111(c).

[10]     5 AAC 92.111; 5 AAC Register 242 (July 2022).

[11]     *See* Alaska Const. art. VIII, § 3 ("Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use.").

[12]     *See* 5 AAC 92.111(c).

Michelle Stone Bittner ("Plaintiff") has been an Alaska resident since 1979 and is a non-consumptive user of wildlife. She has traveled extensively in Western Alaska including fishing in the Brooks River with the brown bears, some of whom may have been killed in the Alaska Department of Fish and Game's recent predator control program in the western calving area of the [Mulchatna caribou herd]. Despite her extensive travels around the state and in the wilderness, Plaintiff has only ever seen one wolf.

Elsewhere in her amended complaint, Bittner alleged that "[f]or people who are non-consumptive users of wildlife, watching and/or knowing [Alaska's] animals are declining is devastating and concerning. These wild animals provide a connection to the land and are part of people's longtime identity and experience as Alaskans." She further alleged that "non-consumptive uses" of wildlife include "conservation, wildlife viewing, photography, and just knowing that the wildlife is flourishing in Alaska."

Bittner maintained that after the changes to the predator control program were implemented, ADF&G killed 94 brown bears, five black bears, and five wolves "over the course of just 17 days" in May 2023. She asserted that after ADF&G took these actions, "the population of brown bears at Brooks Fall[s]," a popular bear-viewing destination, "appear[ed] to be noticeably smaller . . . than in other years." She also claimed that after ADF&G implemented the expanded predator control program, she "visited and spoke to members of the staff at Katmai National Park and learned that some of the bears who return every year to fish in the Brooks River have not returned this year."

## C.    Proceedings

The Board moved to dismiss Bittner's complaint, arguing that she lacked standing to challenge the changes to the predator control program and that she was not

an "interested person" entitled to a declaratory judgment under the APA.[13]  The Board also pointed out that Bittner did not participate in its January 2022 meeting or provide comments on the proposed regulatory changes.

Bittner opposed the motion to dismiss and moved for leave to amend her complaint a second time.  Bittner requested to expand paragraph 13 of her complaint to include allegations that she was "personally devastated" by the Board's actions "to the point that she has spent hundreds of hours researching the facts and law relating to these matters" and expended time and effort to file and litigate this case.

The superior court granted the motion to dismiss Bittner's complaint, concluding that she had not alleged an injury sufficient to support standing and was not an "interested person" within the meaning of the APA.[14]  The court also denied Bittner's motion for leave to amend her complaint, agreeing with the Board that her proposed amendment was futile.  The Board then moved for an award of attorney's fees,[15] which the court granted.

Bittner appeals.

## III.    STANDARD OF REVIEW

We review the dismissal of a complaint for failure to state a claim de novo, applying our independent judgment.[16]  Whether a litigant is an "interested person" entitled to a declaratory judgment on the validity of a regulation is an issue of statutory

---

[13]    *See* AS 44.62.300(a) ("An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court.").

[14]    *See id.*

[15]    *See* Alaska R. Civ. P. 82(b)(2) (providing for award of attorney's fees to "prevailing party").

[16]    *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 6 (Alaska 2012); *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014).

interpretation.[17]   We review issues of statutory interpretation by applying our independent judgment.[18]

## IV.   DISCUSSION

The superior court dismissed Bittner's complaint for lack of standing, reasoning that she was not personally affected because she did not travel to the location of the predator control program.  Our view of standing is not so limited.  Because Bittner alleged that she returned to an area plausibly impacted by the predator control program expanded by the Board, she articulated an injury to her interest in viewing bears in Katmai National Park that is both specific and personal.  Having demonstrated interest-injury standing, Bittner is an "interested person" under the APA entitled to a declaratory judgment on the validity of the regulation she challenges.  We therefore reverse the order dismissing her complaint.[19]

### A.   Bittner Has Interest-Injury Standing Because She Alleged An Interest In Observing Katmai Bears That Was Harmed By The Board's Actions.

Standing is a prudential doctrine that requires us to ask whether a plaintiff is "a 'proper party to request an adjudication of a particular issue' "[20] in light of the principle that courts "should only hear cases in which a genuine adversarial relationship exists" between the parties.[21]   "[W]e 'interpret the concept [of standing] broadly' with

---

[17]   *See* AS 44.62.300(a).

[18]   *Antenor v. State, Dep't of Corr.*, 462 P.3d 1, 10 (Alaska 2020).

[19]   Because we reverse the order dismissing Bittner's complaint, we do not reach her argument that the court erred by denying her motion for leave to amend the complaint.

[20]   *PLC, LLC v. State, Dep't of Nat. Res.*, 484 P.3d 572, 577 (Alaska 2021) (quoting *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987)).

[21]   *Bowers Off. Prods., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1097-98 (Alaska 1988).

an eye toward increased access to justice."[22]  One way a plaintiff can demonstrate standing is to show an "interest-injury" regarding the subject matter of the case.[23]

Under the interest-injury approach, a plaintiff must allege a "sufficient personal stake in the outcome of the controversy to ensure the requisite adversity"[24] and "an interest which is adversely affected by the complained-of conduct."[25]  "The affected interest may be economic or intangible, such as an aesthetic or environmental interest,"[26] and "the degree of injury to the interest need not be great."[27]  "The basic

---

[22]  *PLC, LLC*, 484 P.3d at 577 (second alteration in original) (quoting *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014)).

[23]  *Id.*  Litigants can also demonstrate citizen-taxpayer standing to maintain suit, but that type is not at issue here.  *See Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004) (noting that plaintiff can establish citizen-taxpayer standing by demonstrating that case "is one of public significance" and plaintiff is "appropriate in several respects").

[24]  *Kanuk*, 335 P.3d at 1092 (quoting *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 12 (Alaska 2012)).

[25]  *PLC, LLC*, 484 P.3d at 578 (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009)).

[26]  *Kanuk*, 335 P.3d at 1092 (quoting *Friends of Willow Lake v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 547 (Alaska 2012)); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."); *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.").

[27]  *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987).

idea," we have explained, "is that an identifiable trifle is enough for standing to fight out a question of principle."[28]

When analyzing a plaintiff's standing at the motion to dismiss stage, we construe the plaintiff's complaint liberally, accept its allegations as true, and "draw all reasonable inferences in [the plaintiff's] favor."[29]  Applying these standards, we conclude that Bittner has alleged a cognizable interest in observing bears in Katmai National Park, and it is reasonable to infer from her allegations that the Board's actions have adversely affected that interest.

Bittner demonstrated an interest in observing bears in Katmai by way of allegations in her complaint that she has "traveled extensively in Western Alaska," including visiting Katmai and "fishing in the Brooks River with the brown bears" *before* ADF&G implemented the changes to the predator control program.  Bittner also has alleged that *after* ADF&G implemented those changes, she returned to Katmai National Park at least once, spoke to staff members there, and "learned that some of the bears who return every year to fish in the Brooks River have not returned this year."

It is reasonable to infer from Bittner's allegations that the Board's actions adversely affected her interest in observing bears in Katmai.  Bittner alleges that "the population of brown bears at Brooks Fall[s] appear[ed] to be noticeably smaller . . . than in other years" after ADF&G implemented the expanded predator control program and that some of the bears she had previously encountered there "may have been killed" in the program.  Because we are reviewing the dismissal of Bittner's complaint, we must accept these allegations as true and draw all reasonable inferences in her favor.[30]

---

[28]     *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001) (quoting *Wagstaff v. Superior Ct., Fam. Ct. Div.*, 535 P.2d 1220, 1225 n.7 (Alaska 1975)).

[29]     *Kanuk*, 335 P.3d at 1092-93 (quoting *Waiste v. State*, 10 P.3d 1141, 1144-45 (Alaska 2000)).

[30]     *Id.*

Drawing all reasonable inferences in Bittner's favor, these allegations show that Bittner has a genuine and cognizable "aesthetic or environmental interest" in observing bears in Katmai that was harmed during the period between her visits.[31] This alleged harm to her interest provides her with a sufficient "personal stake" in this case to support a claim of interest-injury standing.[32]

We reject the Board's argument that Bittner lacks standing because she does not allege "she either resides in, has ever visited, or intends to visit" the specific areas where ADF&G has carried out predator control targeting bears. A plaintiff must allege an interest that is adversely affected by the defendant's wrongful conduct to have standing.[33] But a plaintiff need not personally travel to the precise location of the defendant's allegedly harmful activity so long as the impacts of the activity are plausibly capable of causing harm to the plaintiff's interest elsewhere.[34] Here, Bittner alleges that the Board interfered with her ability to observe bears in Katmai by authorizing ADF&G to kill bears in neighboring areas where the bears allegedly roam. As long as it is plausible that the harm caused by the predator control program extends to the area of Katmai that Bittner visited, her allegation is sufficient to support interest-injury standing.[35]

---

[31] *See, e.g.*, *Friends of Willow Lake*, 280 P.3d at 547.

[32] *Kanuk*, 335 P.3d at 1092 (first quoting *Friends of Willow Lake*, 280 P.3d at 547; and then quoting *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 12 (Alaska 2012)).

[33] *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1219 (Alaska 2009).

[34] *Compare Kanuk*, 335 P.3d at 1092-95, 1095 n.27 (holding that plaintiffs have standing to contest State's alleged failure to mitigate climate change because plaintiffs plausibly alleged that the State's failure caused them harm), *with Neese*, 210 P.3d at 1219 (holding that plaintiffs failed to allege standing because complaint did not claim interest that was harmed by specific defendants).

[35] *See Kanuk*, 335 P.3d at 1092-93 (holding that plaintiff who witnessed decline in whale population due to State's inaction had standing).

We also reject the Board's argument that it is not reasonable to infer that bears may have travelled between Katmai and the areas where ADF&G has killed bears as part of its predator control program. We take judicial notice[36] that Brooks Falls is located less than 100 miles from the boundary area of the predator control program targeting bears.[37] The reasonableness of the inference that bears travel between these two areas depends primarily on how far bears travel across Western Alaska, which is a factual question.[38] At the motion-to-dismiss stage, we must "view the facts in the best light for the nonmovant."[39] Viewing the facts in the best light for Bittner, we conclude that it is reasonable to infer that some bears may have travelled between Katmai and the areas where ADF&G killed bears as part of its predator control program.

Finally, we reject the Board's argument that Bittner lacks standing because she alleges only that the predator control program "may" have caused the deaths of bears she otherwise might have had the opportunity to observe, without alleging with certainty that the program has already caused her direct harm. We do not

---

[36]    *See* Alaska R. Evid. 201(b) (providing that courts may take judicial notice of facts "not subject to reasonable dispute" that are either "(1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

[37]    *See* 5 AAC 92.111(c) (noting program is authorized to operate in Game Management Unit 9(B)); ALASKA DEP'T OF FISH & GAME, UNIT 9 (2022), https://www.adfg.alaska.gov/static/hunting/maps/gmumaps/pdfs/9.pdf (map of Game Management Unit 9); *Maps: Katmai National Park & Preserve, Alaska*, NAT'L PARK SERV., https://www.nps.gov/katm/learn/photosmultimedia/upload/KATM_Park-Map_for_web.pdf (last visited Dec. 11, 2024).

The Board agreed at oral argument that the distance between Brooks River and the nearest borders of the relevant Game Management Units is a proper subject for judicial notice.

[38]    The Board agreed at oral argument that bears travel.

[39]    *See Kanuk*, 335 P.3d at 1092 (quoting *Waiste v. State*, 10 P.3d 1141, 1144-45 (Alaska 2000)).

always require certainty about causation to establish interest-injury standing based on harms with many potential causes; an allegation that a defendant breached a legal duty to the plaintiff that may have contributed to harm the plaintiff suffered can be sufficient.[40]

### B. Bittner Is An "Interested Person" Within The Meaning Of The APA And Thus Is Entitled To A Declaratory Judgment As To The Validity Of The Regulation.

The APA provides that "[a]n interested person" may obtain a "judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court."[41] The superior court concluded that Bittner was not an "interested person" entitled to a declaratory judgment regarding the validity of the revised predator control program because she was not directly affected by the regulation and she did not submit comments on the proposed regulatory changes in January 2022. We disagree.

We reject the Board's argument that Bittner is not an interested person because she is not "directly impacted by the regulation being challenged." Although a person who is "directly affected" by a regulation is an "interested person,"[42] we have not held that the APA allows challenges only by people who can prove that they have been directly affected by a regulation. On the contrary, we have explained that the

---

[40] *See id.* at 1095 & n.27. In *Kanuk*, the State argued that the plaintiffs lacked standing because the alleged harm from global warming was caused by global emissions, not the State's actions. *Id.* at 1095. We nevertheless concluded that the plaintiffs had standing because the complaint alleged that the State had a legal duty to protect and preserve the atmosphere and it failed to do so. *Id.*

[41] AS 44.62.300(a).

[42] *See Rutter v. State, Com. Fisheries Entry Comm'n*, 668 P.2d 1343, 1346 (Alaska 1983) ("In this case, Rutter is 'interested' in the number of permits issued, for his ability to fish commercially is directly affected by the number of trollers using the fishery."), *superseded in part by statute on other grounds*, ch. 22, § 5, SLA 1985, *as recognized in Haynes v. State, Com. Fisheries Entry Comm'n*, 746 P.2d 892, 894 (Alaska 1987).

"interested person" requirement does not "deny standing to parties who could demonstrate at the filing of a complaint only the possibility of harm."[43] Accordingly, we have held that "the threat of future injury confers standing to seek judicial aid to forestall a possible harm."[44] Under this standard, Bittner's allegations are sufficient to make her "interested" in the predator control regulation at issue here.

We have interpreted the APA's "interested person" requirement broadly, often applying the same considerations we use when deciding whether a litigant has interest-injury standing.[45] We take this opportunity to clarify that when a party has interest-injury standing to challenge the validity of a regulation — as Bittner does in this case — that party is also an interested person within the meaning of the APA and is entitled to a declaratory judgment on that regulation's validity. We therefore hold that Bittner is an interested person entitled to a declaratory judgment on the validity of Proposal 21.

We also reject the Board's argument that Bittner cannot be an interested person under the APA because she did not submit comments to the Board before it adopted the regulatory changes she challenges. The Board's argument conflates the APA's interested person requirement with the doctrine of exhaustion. In some contexts, we have required plaintiffs to exhaust administrative remedies prior to raising procedural challenges to agency action, but we have not required plaintiffs to exhaust administrative remedies before challenging the validity of administrative regulations

---

[43] *Johns v. State, Com. Fisheries Entry Comm'n*, 699 P.2d 334, 338 (Alaska 1985).

[44] *Id.* at 337 (citing *Rutter*, 668 P.2d at 1343).

[45] *See, e.g.*, *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 12 (Alaska 2012); *Bowers Off. Prods., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1096 n.4, 1098 (Alaska 1988); *Haynes*, 746 P.2d at 895.

under the APA.[46]  Even assuming, without deciding, that a party ordinarily must participate in a public comment process to raise a challenge to agency rulemaking under the APA, we would excuse Bittner's lack of participation under the circumstances of this case.

Bittner alleges the Board failed to provide adequate notice of the proposed amendments to the predator control program.  Specifically, she alleges that the proposal to add bears as a targeted species was adopted less than seven minutes after it was first announced to the public.  Taking these allegations as true,[47] we reject the argument that Bittner's failure to submit comments — in the extremely short window between the time notice was provided and the Board acted — prevents her from being an "interested person" where she has otherwise alleged sufficient facts to demonstrate interest-injury standing.[48]

In sum, we conclude that Bittner has interest-injury standing and is an "interested person" entitled to a declaratory judgment on the validity of the regulation at issue.  We therefore reverse the dismissal of her complaint.  Because we reverse the dismissal of Bittner's complaint, we vacate the associated award of attorney's fees to

---

[46]    *See State, Dep't of Transp. & Pub. Facilities v. Fairbanks N. Star Borough*, 936 P.2d 1259, 1260-61 (Alaska 1997); *see also Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004) (holding that interested parties under Clean Air Act forfeit challenges to agency rulemaking on grounds not raised during rulemaking proceedings).

[47]    *See Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014) ("We review a motion to dismiss de novo, construing the complaint liberally and accepting as true all factual allegations.").

[48]    *Cf. Bruns v. Mun. of Anchorage, Anchorage Water & Wastewater Util.*, 32 P.3d 362, 371 (Alaska 2001) (noting, in context of appeal from agency adjudication, that "defects in the administrative process," among other factors, "can make pursuit of administrative remedies difficult or ineffective, and in some circumstances can excuse the . . . failure to exhaust available administrative remedies").

the Board without deciding whether Bittner is exempt by statute from paying the Board's attorney's fees.[49]

## V.    CONCLUSION

The superior court's decision is REVERSED, the court's award of attorney's fees is VACATED, and the case is REMANDED for further proceedings.

---

[49]    *See* AS 09.60.010(c)(2); Alaska R. Civ. P. 82(a); *see also City of Valdez v. Regul. Comm'n of Alaska*, 548 P.3d 1067, 1086 (Alaska 2024).